# Supreme Court of Florida

_____

No. SC16-1599
_____

**TAVARES W. SPENCER, JR.,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[January 25, 2018]

QUINCE, J.

This case is before the Court for review of the decision of the Second

District Court of Appeal in Spencer v. State, 196 So. 3d 400 (Fla. 2d DCA 2016).

In its decision the district court certified a question to be of great public

importance. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

The facts of this case were provided in the decision below. Relevant to our

discussion, Tavares Wayntel Spencer, Jr., was convicted for attempted first-degree

murder, robbery with a firearm, aggravated battery with great bodily harm, and

aggravated assault with a deadly weapon and sentenced to four concurrent twenty-

five year terms of imprisonment. Spencer, 196 So. 3d at 401-02. On appeal,

Spencer challenged the trial court's rulings on his objections to the State's exercise of two peremptory challenges of African-American venirepersons. Id. at 401. The Second District held that the trial court was not required to perform a full genuineness analysis on the record in every instance in which a party objects to a peremptory challenge and that the opponent "must expressly make a claim of pretext and at least attempt to proffer the circumstances that support its claim." Id. The Second District therefore held that Spencer failed to preserve his claim and certified the following question:

> DURING A MELBOURNE[1] HEARING, WHEN A TRIAL COURT FINDS THAT THE PROPONENT'S REASON FOR A PEREMPTORY CHALLENGE IS FACIALLY NEUTRAL, IS IT THE BURDEN OF THE OPPONENT (1) TO CLAIM THE REASON IS A PRETEXT, (2) TO PLACE INTO THE RECORD THE CIRCUMSTANCES SUPPORTING ITS POSITION, AND (3) TO OBJECT IF THE TRIAL COURT'S RULING DOES NOT CONTAIN ADEQUATE FINDINGS ON THE ISSUE OF GENUINENESS?

Id. at 411.

The real issue presented here is whether our decision in Melbourne requires a trial court to strictly adhere to the procedure as outlined in Melbourne and its progeny. In this instance, it would be elevating form over substance. Therefore, we agree with the Second District that it does not. We hereby approve the decision

---

1. Melbourne v. State, 679 So. 2d 759 (Fla. 1996).

- 2 -

of the Second District but not its analysis.  We write to clarify that preservation of an issue under Batson v. Kentucky, 476 U.S. 79 (1986), does not require anything more than what we have previously articulated.  See Melbourne, 679 So. 2d at 765 (citing Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993)).  The Second District's opinion spells out a process that, while possibly ideal, is more than what is necessary to preserve the issue for appellate review.[2]  We reiterate, however, that trial courts should ideally follow each step—in order—to avoid the type of confusion that is at issue in this case.

The issue presented in the certified question concerns the exclusion of two African-American jurors through the exercise of peremptory strikes.  Spencer challenged the strikes as racially motivated and the trial court overruled his objection.

Peremptory challenges, while not a constitutionally protected right, have been recognized as "one of the most important of the rights secured to the accused."  Busby v. State, 894 So. 2d 88, 98 (Fla. 2004) (quoting Swain v. Alabama, 380 U.S. 202, 219 (1965), overruled in part by Batson, 476 U.S. at 93-

_____

2.  Indeed, appellate review of the entire record once a Batson objection has been properly raised may be necessary in certain cases to uncover pretext.  See, e.g., Foster v. Chatman, 136 S. Ct. 1737 (2016) (finding that, upon independent review of the record, the facially neutral reasons given for striking African-American jurors were not based in fact).

99); see also Hayes v. State, 94 So. 3d 452, 459 (Fla. 2012). Peremptory and for-cause challenges "are the primary tools by which parties remove unfavorable jurors from the jury panel." Hayes, 94 So. 3d at 460. Unlike for-cause challenges, however, peremptory challenges "are limited in number and have traditionally been exercised according to a party's unfettered discretion." Id. (citing Busby, 894 So. 2d at 99). The only limitation to a party's discretion in the use of peremptory challenges is that they may not be used to purposefully discriminate against members of a distinctive group by excluding them from service. Batson v. Kentucky, 476 U.S. 79 (1986). "Jurors are not fungible. Each juror has a constitutional right to serve free from discrimination. The striking of a single African-American juror for racial reasons violates the Equal Protection Clause." Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993) (citing State v. Slappy, 522 So. 2d 18, 21 (Fla. 1988)).

In State v. Neil, 457 So. 2d 481 (Fla. 1984), receded from in part on other grounds by State v. Johans, 613 So. 2d 1319, 1321 (Fla. 1993), we held that the exercise of a peremptory challenge solely to exclude a venireperson on the basis of race violated the right of both the defendant and the State to a trial by an impartial jury under the Florida Constitution. Id. at 486. Neil provided a test for trial courts to use to determine whether a party's exercise of a peremptory challenge was used as a pretext for racial discrimination. Id. at 485 ("The initial presumption is that

- 4 -

peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race." (footnote omitted)).

Thereafter, the United States Supreme Court issued its decision in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), which reaffirmed the principle that the State's[3] deliberate denial to African Americans of participation as jurors on account of race violated the Equal Protection Clause. <u>Id.</u> at 84 (citing <u>Swain v. Alabama</u>, 380 U.S. 202, 203-04 (1965)). The Supreme Court sought to balance the historical privilege of peremptory challenges free of judicial control and the constitutional prohibition against excluding potential jurors on the basis of their race. <u>Id.</u> at 91. After rearticulating the standards for assessing a prima facie case of discriminatory peremptory strikes, the <u>Batson</u> Court explained that the prosecution "must articulate a neutral explanation related to the particular case to be tried" and then

_____

3. Unlike <u>Neil</u>, the decision in <u>Batson</u> focuses on a defendant's rights.

- 5 -

the trial court "will have the duty to determine if the defendant has established purposeful discrimination." Id. at 98.

Following Batson, "this Court modified the test for evaluating peremptory challenges under Neil." Dorsey v. State, 868 So. 2d 1192, 1197 (Fla. 2003) (citing State v. Slappy, 522 So. 2d 18 (Fla. 1988), receded from in part on other grounds by Melbourne, 679 So. 2d at 765). In Slappy, we provided that the proper inquiry required a "clear and reasonably specific" race-neutral explanation. Slappy, 522 So. 2d at 22 (quoting Batson, 476 U.S. at 98 n.20). We held that instead of accepting the proffered reasons at face value, the trial court must "evaluate those reasons as [it] would weigh any disputed fact." Id. Slappy provided that the trial court was required to determine both whether the reason was neutral and reasonable and whether the record supported the absence of pretext. Id. at 23.

In Floyd v. State, 569 So. 2d 1226 (Fla. 1990), we required that defense counsel challenge the accuracy of an explanation for a strike, noting that even a patently false on-the-record, race-neutral explanation must be properly preserved for appellate review. Id. at 1229-30.

> It is the state's obligation to advance a facially race-neutral reason that is supported in the record. If the explanation is challenged by opposing counsel, the trial court must review the record to establish record support for the reason advanced. However, when the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on

> notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation, and [the juror] could not have been peremptorily excused. Because defense counsel failed to object to the prosecutor's explanation, the <u>Neil</u> issue was not properly preserved for review.

<u>Id.</u>; <u>see also</u> <u>Wright v. State</u>, 586 So. 2d 1024, 1027 (Fla. 1991). In addition to the initial objection, and ensuring that any factual dispute is noted for the record, we held that the opponent of a peremptory strike has a duty to renew the objection in order to preserve the issue for appellate review. <u>Joiner v. State</u>, 618 So. 2d 174, 176 (Fla. 1993) (holding that to properly preserve the issue, an opponent of a peremptory strike must renew his or her objection or accept the jury subject to his or her earlier objection); <u>see also</u> <u>Melbourne</u>, 679 So. 2d at 765 ("Melbourne failed to preserve this issue for review because she did not renew her objection before the jury was sworn." (citing <u>Joiner</u>, 618 So. 2d at 176)).

In 1995, the United States Supreme Court adopted procedural refinements to the <u>Batson</u> rule in <u>Purkett v. Elem</u>, 514 U.S. 765 (1995). There, the Supreme Court opined, "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." <u>Purkett</u>, 514 U.S. at 768 (citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993)).

Following <u>Purkett</u>, we issued <u>Melbourne v. State</u>, 679 So. 2d 759 (Fla.

1996), and attempted to provide clarity, noting "the difficulty some Florida courts

have had in applying our state law." <u>Id.</u> at 764. The <u>Melbourne</u> court provided:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
>
> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.

<u>Melbourne</u>, 679 So. 2d at 764 (footnotes omitted). Regarding the third step, in

<u>Hayes v. State</u>, 94 So. 3d 452 (Fla. 2012), we stated:

> The proper test under <u>Melbourne</u> requires the trial court's decision on the ultimate issue of pretext to turn on a judicial assessment of the credibility of the proffered reasons and the attorney or party proffering them, both of which "must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record." <u>Slappy</u>, 522 So. 2d at 22; <u>see also</u> <u>Melbourne</u>, 679 So. 2d at 764; <u>Young v. State</u>, 744 So. 2d 1077, 1082 (Fla. 4th DCA 1999) ("[I]dentifying the true nature of an attorney's motive behind a peremptory strike turns primarily on an assessment of the attorney's credibility."). We have consistently held that the trial court's assessment will be affirmed on appeal unless clearly erroneous. <u>Melbourne</u>, 679 So. 2d at 764-65; <u>see also</u> <u>Rodriguez v. State</u>, 753 So. 2d 29, 41 (Fla. 2000) (noting that because the validity of a peremptory strike rests on the trial court's assessment

- 8 -

of credibility, an appellate court should affirm unless the determination is clearly erroneous).

. . . .

After the trial court determines that the proponent has proffered a race-, ethnicity-, or gender-neutral reason and then proceeds to evaluate that reason's genuineness, the trial court can easily inquire of the opponent of the strike, who at that point bears the burden of persuasion, to demonstrate why the reason was not genuine. But where the opponent of the strike fails to provide the trial court with an explanation as to why the reasons given were pretextual, and the trial court thereafter fails to undertake an on-the-record genuineness inquiry, the reviewing court is unable to engage in meaningful appellate review.

Hayes, 94 So. 3d at 462-63 (citing Dorsey v. State, 868 So. 2d 1192, 1200 (Fla. 2004)).

Both the United States Supreme Court and this Court have explained the importance of the third step. State v. Whitby, 975 So. 2d 1124, 1127-28 (Fla. 2008) (Pariente, J., concurring) ("Moreover, since the second step of Melbourne requires only a race-neutral reason, the inquiry returns in the third phase to the proponent [sic] of the strike to prove a discriminatory purpose. It is the third step that is the critical one.").

The first two Batson steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim. "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination."

- 9 -

<u>Johnson v. California</u>, 545 U.S. 162, 171 (2005) (quoting <u>Purkett v. Elem</u>, 514

U.S. 765, 768 (1995)).

> In step (3), the court's focus is on the genuineness and <u>not</u> the reasonableness of the explanation.  Further, the relevant circumstances that the court is to consider in determining whether the explanation is pretextual include such factors as the racial makeup of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged venireperson; or singling out the venireperson for special treatment.  On appeal, peremptory challenges are presumed to be exercised in a nondiscriminatory manner, but the trial court's decision, which turns primarily on an assessment of credibility, will be affirmed on appeal <u>unless clearly erroneous</u>.

<u>Rodriguez v. State</u>, 753 So. 2d 29, 40 (Fla. 2000) (citation omitted) (citing

<u>Melbourne</u>, 679 So. 2d at 764)).  "If the explanation is facially race-neutral and the

court believes that, given all the circumstances surrounding the strike, the

explanation is not a pretext, the strike will be sustained."  <u>Melbourne</u>, 679 So. 2d at

764 (footnotes omitted).

> Therefore, where the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court.  This same reasoning applies to instances where the record affirmatively indicates that the trial court engaged in the wrong legal analysis.  Deferring to the trial court's genuineness determination on appeal when no such determination has been made invites an arbitrary result.

<u>Hayes</u>, 94 So. 3d at 463.  However, <u>Hayes</u> also stated:

> We emphasize that under the final step, the step at issue in this case, if the proponent's reason for the challenge is race-, ethnicity-, or gender-neutral, then the trial court should inquire of the opponent of the strike. At this point, the opponent of the strike bears the burden of persuasion to establish that the reason is a pretext for discrimination, and the trial court has the responsibility to determine the issue of genuineness based on the record before it. The trial court should request that the opponent advise why the reason is not genuine, and how, given all the circumstances, the explanation is a pretext.

Id. at 467.

Spencer argues that this Court should answer the certified question in the negative because the third step of Melbourne, like Batson, is a decisional step where the trial judge evaluates the parties' persuasiveness after considering all relevant circumstances. Spencer argues that the preservation occurs in step one that can only be waived as articulated in Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993), by failing to renew objections before the jury is empaneled.[4] Alternatively, the State argues that because the opponent of a peremptory strike bears the burden of persuasion, that burden should include expressly stating a claim of pretext and presenting facts and argument to support such a claim. We agree with both arguments.

---

4. Spencer's compliance with Joiner is not disputed. See Spencer, 196 So. 3d at 403 ("At the end of the selection process when accepting the jury, Mr. Spencer's attorney made a proper Joiner objection concerning these two peremptory challenges." (citing Joiner, 618 So. 2d at 176)).

In its analysis below, the Second District Court of Appeal concluded that this Court's decision in Hayes "has not placed an automatic burden on the trial court to perform a full genuineness analysis on the record in every instance in which a party objects to a peremptory challenge and the proponent provides a facially neutral reason." Spencer, 196 So. 3d at 401. The Second District reasoned that an "opponent must expressly make a claim of pretext and at least attempt to proffer the circumstances that support its claim." Id. The Second District found that Spencer failed to so preserve his Melbourne claim. Id.

At the heart of the Second District's reasoning is its belief that "the trial court should not be expected to initiate on its own a genuineness challenge of every facially neutral reason. . . . The opponent should be expected to object to the facially neutral reason as a pretext." Spencer, 196 So. 3d at 407. Although the Second District acknowledges that "[i]t is unquestionably the better practice for the trial court, having made a determination of neutrality under step 2 of the Melbourne analysis, to ask the opponent whether he or she wishes to challenge the genuineness of the proponent's reason," it nevertheless holds that there is "no reason to reverse a judgment and sentence following an entire trial when the trial court omits this step without objection from anyone." Spencer, 196 So. 3d at 407. We disagree with this statement because it is contradictory to the plain language of Hayes. Hayes, 94 So. 3d at 461 ("Compliance with each step [of Melbourne] is

not discretionary, and the proper remedy when the trial court fails to abide by its duty under the <u>Melbourne</u> procedure is to reverse and remand for a new trial.").

While we were not "abandoning requirements for full preservation in <u>Hayes</u>," <u>Spencer</u>, 196 So. 3d at 408, <u>Hayes</u> provides that the trial court has a duty to perform the correct legal analysis independent of trial counsel's duty. <u>Hayes</u>, 94 So. 3d at 465 ("Since the reason defense counsel offered was facially gender neutral, the trial court was then required to engage in step three—the genuineness analysis."); <u>see also</u> <u>Batson</u>, 476 U.S. at 98 (after the prosecution articulates a neutral explanation "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination."); <u>Slappy</u>, 522 So. 2d at 22 ("[A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact."). Here, the trial judge performed his duty when he requested a response from defense counsel immediately after the State provided its purported race-neutral reason and before the trial court ruled on the genuineness of the reason.

As recognized by the Second District, the problem in this case arose because the trial court conflated the second and third steps. <u>Spencer</u>, 196 So. 3d at 405 ("Courts have had a tendency to intermingle steps 2 and 3 of the <u>Melbourne</u> analysis. Indeed, the transcript in this case as to venireperson 11 demonstrates that the trial court announced the judicial decision for step 3 before it announced the

decision for step 2." (footnote omitted)).  The problem was then compounded by defense counsel who, when asked to respond, gave no response and asked no clarifying questions regarding the trial court's apparent departure from procedure.

> MR. FIGUEROA [defense counsel]: Judge, [number 16], I believe was an African American female. This is the second African American stricken by the state for peremptory. I would ask for a race-neutral reason.

> THE COURT: Is that as to number 16?

> MR. FIGUEROA: It is.

> THE COURT: There's an objection. The burden shifts to the state.

> MR. FALCONE [assistant state attorney]: During individual voir dire at the bench, juror [16] indicated that she had been arrested for battery, battery, domestic violence, specifically.

> THE COURT: Just a moment.  Let me look at my notes.

> MR. FIGUEROA: Judge, that is correct.

> THE COURT: You may respond.

> MR. FIGUEROA: I have no response.

> THE COURT: The state has indicated a race-neutral reason. The court finds no pretext in the exercise of this peremptory challenge. The objection to the exercise of a peremptory as to number 16 is overruled.

>  . . . .

> THE COURT: State exercises a peremptory as to number 11.

> MR. FIGUEROA: Judge, I'm sorry to interrupt, but I would ask for a race-neutral reason, him being an African American male.

> THE COURT: Burden shifts. Go ahead.

- 14 -

MR. FALCONE: During individual voir dire, the juror did indicate that he had a friend who was arrested for breaking and entering, B and E.

MR. FIGUEROA: He also indicated that he had a friend that was killed, and I would also say he did say numerous times he could be fair and impartial.

THE COURT: Okay. I note that the standard here is whether or not the state has indicated a race-neutral reason, whether the court sees or finds or perceives a pretext in the exercise of that peremptory challenge. The court finds no such pretext, finds that you've stated a race-neutral reason. The objection is overruled as to the exercise [of] that peremptory challenge.

We have continuously worked to reach "a judicious balance . . . in the effort to eliminate racial discrimination, yet maintain the full and free use of peremptory challenges." Dorsey, 868 So. 2d at 1203 (Bell, J., dissenting). On one hand, the trial court has a duty to make an evaluation of all available evidence and circumstances to determine whether the race-neutral reason provided for a peremptory challenge is genuine or pretextual. Likewise, the trial court must make the determination that a stated reason is both race-neutral and genuine. On the other hand, "the ultimate burden of persuasion . . . rests with, and never shifts from the opponent of the strike." Purkett, 514 U.S. at 768.

In the present case there were two failures, both of which were acknowledged by the Second District. First, the trial court did not follow the established procedure to evaluate the strike and conflated the second and third steps. Second, defense counsel, when asked for a response, gave none. Because

- 15 -

the burden of persuasion was on defense counsel, as the opponent of the strike, and defense counsel did not respond, the trial court properly overruled the objections. We also note that on appeal the defendant has not argued that the record supports a finding of pretext for the challenged strikes and our review of the record uncovered none. As we noted in Dorsey, "[w]hen the reason for a peremptory challenge is based on a juror's verbal response to questioning during voir dire . . . [t]he juror's response is not only witnessed by the court but, if there is any doubt about the validity or genuineness of the challenge or its pretextual nature, is also captured by the court reporter and available for the trial court to confirm and the appellate court to review. When the appellate court can discern that the actual responses differ from what was represented to and accepted by the trial court, the court's ruling is reversed." Dorsey, 868 So. 2d at 1195; see also Foster, 136 S. Ct. at 1749 (noting that the prosecution's reasons for striking a prospective juror seemed "reasonable enough" on their face but that an "independent examination of the record . . . reveal[ed] that much of the reasoning provided . . . ha[d] no grounding in fact").

Simply put, in the context of challenges to the use of a peremptory strike, we reaffirm the holding of Melbourne, where we provided the following procedure:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3).

Melbourne, 679 So. 2d at 764 (footnotes omitted). When, as here, the Melbourne inquiry is incomplete or proceeds out of order, the reviewing court's focus should be on the opportunity provided to the opponent of the strike to be heard and make argument. While we disagree with the Second District that the opponent may only preserve the issue for appellate review by making a new objection as to pretext, we agree that when, as here, the opponent has been asked to respond after the proponent has offered a reason, the requirements of Melbourne have been met.

Accordingly, Spencer properly preserved his challenge for appellate review but the trial court did not err in overruling his objections. For the foregoing reasons, we approve the decision of the Second District Court of Appeal to affirm Spencer's convictions.

It is so ordered.

LABARGA, C.J., and PARIENTE, J., concur.
LEWIS and POLSTON, JJ., concur in result.
LAWSON, J., concurs in result with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LAWSON, J., concurring in result.

I would approve the result reached by the Second District Court of Appeal

- 17 -

and its practical, well-reasoned analysis. Accordingly, I would answer each part of the certified question in the affirmative and bring needed clarity to this area of the law pitched into confusion by dicta in Hayes v. State, 94 So. 3d 452 (Fla. 2012).

Long before Hayes, in Floyd v. State, 569 So. 2d 1225, 1229-30 (Fla. 1990), we set forth the parties' respective obligations and the procedure required of the trial court when a defendant's counsel objects to the State's peremptory challenge as racially motivated, as follows:

> It is the state's obligation to advance a facially race-neutral reason that is supported in the record. If the explanation is challenged by opposing counsel [in step 3], the trial court must review the record to establish record support for the reason advanced. However, when the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation, and [the juror] could not have been peremptorily excused. Because defense counsel failed to object to the prosecutor's explanation, the Neil[5] issue was not properly preserved for review.

---

5. State v. Neil, 457 So. 2d 481 (Fla. 1984), is "[a] seminal Florida case on this issue . . . [which] set out a procedure for dealing with racially-motivated peremptory challenges." Melbourne v. State, 679 So. 2d 759, 763 (Fla. 1996).

(Emphasis added.)  This explanation of the step 3 preservation rule in Floyd is

strikingly similar to the basic preservation rule suggested by the Second District:

just as Floyd instructs, the Second District's rule requires the opponent of the strike

to challenge the neutral reason, in step 3, and to explain on the record the basis for

that challenge in order to preserve any error in the trial court's ruling on the

Batson[6] issue.  Specifically, the Second District's rule provides that to preserve the

argument that the trial judge erred in allowing the strike after a neutral reason was

proffered "the opponent [of a peremptory strike] must expressly make a claim of

pretext and at least attempt to proffer the circumstances that support its claim."

Spencer v. State, 196 So. 3d 400, 401 (Fla. 2d DCA 2016).  The difference

between what Floyd set forth as required of the opponent of a peremptory strike to

preserve an error in step 3 and the preservation rule articulated by the Second

District is simply that the Second District's rule focuses on genuineness and the

Floyd rule does not.  This difference is fully explained by the fact that Floyd

predated Melbourne v. State, 679 So. 2d 759, 763-64 (Fla. 1996), in which this

Court refined the analysis to focus on the "genuineness" of the proffered race-

_____

6.  Batson v. Kentucky, 476 U.S. 79 (1986), is the seminal United States
Supreme Court case on this issue and sets forth the three-step procedure for dealing
with racially motivated challenges that served as a foundation for Melbourne.  See
Melbourne, 679 So. 2d at 763-64.  I use the term Batson issue in this opinion,
consistent with the majority opinion in this case.  But, in Florida, the issue can also
be referred to as a Neil issue (the nomenclature used in Floyd).

neutral reason in step 3. We have never receded from <u>Floyd</u> and, post-<u>Melbourne</u>, this Court has continued to cite and quote <u>Floyd</u> to explain what the opponent of a strike must do to preserve its <u>Batson</u> challenge for appellate review after the proponent proffers a race-neutral reason. <u>Truehill v. State</u>, 211 So. 3d 930, 943 (Fla. 2017); <u>Hoskins v. State</u>, 965 So. 2d 1, 9 (Fla. 2007); <u>Dorsey v. State</u>, 868 So. 2d 1192, 1197 (Fla. 2003).

Contrary to <u>Floyd</u> and the many cases following it, <u>Hayes</u> states, in dicta, that the opponent of a peremptory strike need not challenge the proponent's race-neutral reason to fully preserve a <u>Batson</u> challenge for review. <u>Hayes</u>, 94 So. 3d at 463. Instead, <u>Hayes</u> explains that "where the opponent of the strike <u>fails to provide the trial court with an explanation as to why the reasons given were pretextual</u>," the judge must nonetheless independently "undertake an <u>on-the-record</u> genuineness inquiry" so that the appellate court can "engage in meaningful appellate review."[7]

---

7. The Second District properly treated this language as dicta. <u>Spencer</u>, 196 So. 3d at 409. The issue presented in <u>Hayes</u> was not whether the trial court erred in failing to ask the opponent of the strike, on its own initiative, to provide reasons to find pretext. The issue was whether the trial court erred, first, in expressly applying the for-cause standard—rather than the "genuineness" standard—to its evaluation of the neutral reason the proponent gave for the strike and, later, in making an after-the-fact finding of pretext in the face of ironclad genuineness arguments by the proponent, essentially no advocacy by the opponent for a finding of pretext, and an ignored request by the proponent for an explanation of the court's finding. <u>Hayes</u>, 94 So. 3d at 456-57. Although this Court's opinion refers to the difficulties that allegedly arise when there is no on-the-record genuineness inquiry following the proffer of a neutral reason, <u>id.</u> at 463, the facts of <u>Hayes</u> did not involve those circumstances. Therefore, the suggestion that the trial court is

- 20 -

Id. (emphasis added).  I see no way to reconcile Floyd—which unambiguously and appropriately places the burden on the objecting party to challenge the neutral reason proffered by the proponent of the strike—with the Hayes dicta, which places the burden on the trial judge to question the genuineness of the State's response on the record, oddly shifting to the judge what in all other contexts would be the objecting party's obligation to adequately put the trial court on notice of the basis for its challenge and thereby create a record in support of its objection.  See, e.g., Happ v. Moore, 784 So. 2d 1091, 1098, 1100, 1102 (Fla. 2001) (noting that any specific legal argument, to be preserved for appellate review, must have been raised in the trial court); Tillman v. State, 471 So. 2d 32, 34-35 (Fla. 1985) (explaining that to adequately preserve an alleged error for appellate review, the legal basis for the argument at the trial court level must be generally the same as

---

required to initiate a genuineness inquiry on the record when no party has invited such probing is dicta—which the plurality opinion in this case gives undue weight.  See State v. Yule, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005) (Canady, J., concurring specially) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment.  If not a holding, a proposition stated in a case counts as dicta." (quoting Michael Abromowicz & Maxwell Stearns, Defining Dicta, 57 Stan. L. Rev. 953, 1065 (2005)); New Port Largo, Inc. v. Monroe County, 985 F.2d 1488, 1500 n.7 (11th Cir. 1993) (Edmonson, J., concurring specially) (explaining that even a statement labeled as a holding is not a holding unless it decides a matter that "was squarely presented by the facts of the case and was a proposition that absolutely must have been decided to decide the concrete case then before the court").

the legal basis for the claim of error at the appellate level).  <u>Hayes</u> also announced

what appears to be a per se reversal rule to be applied whenever a trial judge fails

to "undertake an on-the-record genuineness inquiry," explaining, "Compliance

with each step is not discretionary, and the proper remedy when the trial court fails

to abide by its duty under the <u>Melbourne</u> procedure is to reverse and remand for a

new trial."  <u>Hayes</u>, 94 So. 3d at 461.

It is time to choose between our inconsistent pronouncements in <u>Floyd</u> and

<u>Hayes</u>.  I would follow <u>Floyd</u>, as the Second District did below, for three reasons.

First, the step 3 preservation requirement properly reflects the two relevant

rules of law that should drive our resolution of this issue: (1) "peremptories are

presumed to be exercised in a nondiscriminatory manner," <u>Banks v. State</u>, 46 So.

3d 989, 996 (Fla. 2010) (quoting <u>Melbourne</u>, 679 So. 2d at 764); and (2) "the

ultimate burden of persuasion regarding racial motivation rests with, and never

shifts from, the opponent of the strike," <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995)

(citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993)); <u>see also</u>

<u>Melbourne</u>, 679 So. 2d at 764 ("Throughout this process, the burden of persuasion

never leaves the opponent of the strike to prove purposeful racial discrimination.");

<u>State v. Whitby</u>, 975 So. 2d 1124, 1127-28 (Fla. 2008) (Pariente, J., concurring)

("Moreover, since the second step of <u>Melbourne</u> requires only a race-neutral

reason, the inquiry returns in the third phase to the proponent [sic] of the strike to prove a discriminatory purpose.").

In short, after the proponent of the strike announces a facially race-neutral reason for the strike (step 2), there is no practical way for the opponent of the strike to meet his or her burden of persuasion without challenging the facially race-neutral reason as a pretext—which is exactly what the Second District suggested that the opponent must do to preserve any error that arises in step 3. If the opponent of the strike does not challenge the race-neutral reason after its proffer, the trial court will usually be left with nothing but a presumption that the peremptory strike was exercised for a genuine, race-neutral reason. At that juncture, the proper legal ruling would be to overrule the objection and allow the strike. I say "usually" because there may be some cases in which the trial judge does not believe the proffered reason to be genuine, despite the contrary presumption, in which case the correct legal ruling would be to sustain the objection and disallow the strike.[8] Either way, "the trial court's decision turns primarily on an assessment of [the] credibility [of the proponent of the strike] and

---

8. As explained in Melbourne, the trial judge's ultimate ruling is driven by the judge's determination that the neutral reason is genuine. Melbourne, 679 So. 2d at 764. Even in the absence of a fully preserved step 3 argument, the trial judge will have to rule on the ultimate issue and should rule correctly.

- 23 -

will be affirmed on appeal unless clearly erroneous." Melbourne, 679 So. 2d at 764-65.

Second, contrary to the assertion in Hayes, the trial judge does not need to "undertake an on-the-record genuineness inquiry" in the absence of any challenge to the race-neutral reason to allow for "meaningful appellate review." As explained in Melbourne, if the opponent of the strike does not make a record from which the trial court's decision can be challenged on appeal as "clearly erroneous," the trial judge's ruling "will be affirmed." Id. at 764-65. That will be the case if the opponent of the strike has done nothing to challenge the genuineness of the proffered reason at trial. Although that does and should make for a very simple and straightforward appellate review, it does not mean that the review is "meaningless." It simply means that where the opponent of the strike does not meet his or her burden of persuasion, the opponent will also lose that issue on appeal, if it is raised. Cf. Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979) ("In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error.").

Third, as properly recognized by the Second District, it would be both unworkable and inappropriate to ask trial judges to attempt to meet the burden of persuasion for an opponent of the strike in every case "where the opponent of the

strike fails to provide the trial court with an explanation as to why the reasons given were pretextual." Hayes, 94 So. 3d at 463. That is called advocacy. And, it is not the job of a judge. Williams v. State, 143 So. 2d 484, 488 (Fla. 1962) ("The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center.");[9] State ex rel. Davis v. Parks, 194 So. 613, 615 (Fla. 1939) ("This Court is committed to the doctrine that every litigant is entitled to nothing less than the cold neutrality of an impartial judge.").

The only possible justifications that I can see for having trial judges depart their neutral role in this context are (1) that we are talking about an extremely important constitutional right (equal protection) and (2) that venire members have an independent equal protection right not to be discriminated against and are

---

This obligation does not, however, mean that the trial judge is required to raise concerns that have not otherwise manifested.

9. I am not suggesting that it would be improper for the trial judge to question the genuineness of the neutral reason—on the record and in the absence of a step 3 challenge from the opponent of the strike—if the judge has a basis to do so. As explained in footnote 8, even in the absence of a fully preserved objection, the trial judge will still have to rule on the ultimate issue. This means that if the judge has a basis to question the genuineness of the proffered reason, the judge may have questions that need to be answered to rule correctly. The judge should ask those questions. See Melbourne, 679 So. 2d at 764. But, this is far different from requiring trial judges to essentially adopt an adversarial role and question the genuineness of the proffered reason even when there is no basis to do so.

otherwise unrepresented.  As for the first justification, I fully agree that the equal protection right at issue is extremely important and worth protecting.  But, I do not agree that it is so much more important than the other rights often urgently and directly at stake for the parties at trial that it can justify having a trial judge step outside his or her neutral role to search for a violation presumed not to exist, when we do not do so to protect those rights whose violation, if not remedied, could carry more dire, immediate, and certain consequences.  Cf. Williams v. State, 967 So. 2d 735, 747 n.11 (Fla. 2007) (recognizing that a defendant is required to preserve a Confrontation Clause argument and that a mere hearsay objection is insufficient); State v. DiGuilio, 491 So. 2d 1129, 1134-35, 1137 (Fla. 1986) (holding that a comment on post-arrest silence is not per se reversible error, even though it is a "constitutional error" carrying a high risk of depriving the defendant of a fair trial).  As for the second justification, the Second District correctly explained:

> In Powers v. Ohio, 499 U.S. 400, 409, 111 S. Ct. 1364, 113 L.Ed. 2d 411 (1991), the U.S. Supreme Court held that a venireperson has an equal protection right "not to be excluded from [a petit jury] on account of race."  The court was quite aware that a venireperson would have limited ability to enforce this right. Id. at 413-14, 111 S. Ct. 1364.  It held that a criminal defendant has standing to raise this third-party equal protection claim for a venireperson. Id. at 415, 111 S. Ct. 1364.
> The U.S. Supreme Court does not seem to have expected the trial judge to play the role of a venireperson's attorney.  Since the Florida Supreme Court decided Hayes, parties now argue on appeal that Melbourne requires the trial court to demonstrate the

circumstances of "genuineness" when the parties have not made arguments on the record as to those circumstances.

. . .

. . . It is true that the trial courts must make the three decisions required by Melbourne if requested, but the parties are not entitled to sit back and have the court go through this process for them. It simply is not the job of the trial court to develop the circumstances that may weigh against the genuineness of a proposed peremptory challenge. The trial court has an obligation to maintain its neutrality. See, e.g., Livingston v. State, 441 So. 2d 1083, 1086 (Fla. 1983) ("Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge," and a court has the duty "to scrupulously guard this right." (quoting State ex rel. Mickle v. Rowe, 100 Fla. 1382, 1385, 131 So. 331 (1930))); J.L.D. v. State, 4 So. 3d 24, 26 (Fla. 2d DCA 2009) ("The requirement of judicial impartiality is at the core of our system of justice." (quoting McFadden v. State, 732 So. 2d 1180, 1184 (Fla. 4th DCA 1999))). If the trial court is to maintain its position of neutrality, its job is merely to rule on this delicate and fact-intensive issue when the opponent has presented the issue for ruling under its burden of persuasion.

Spencer, 196 So. 3d at 408-09 (citation omitted).

Finally, I note that the Second District's certified question also asks us to consider whether a party should be required to object if the party believes that the trial court's ruling does not contain adequate findings on the issue of genuineness. This question could arise, for example, if the reason given for the strike was that the juror in question had been glaring at the proponent of the strike in a hostile manner and the opponent of the strike disputed this asserted fact. If the trial judge simply ruled without resolving the factual dispute, neither party should be able to argue for reversal on appeal on grounds that the trial court failed to make a critical factual finding on the record without first objecting on that basis—and giving the

trial court an opportunity to correct any error at that time.  Cf. State v. Townsend, 635 So. 2d 949, 959 (Fla. 1994) (noting that a trial court's failure to make adequate factual findings regarding admission of child hearsay must be preserved for review by a contemporaneous objection); Elwell v. State, 954 So. 2d 104, 108-09 (Fla. 2d DCA 2007) (finding objections to the reliability of child hearsay statements insufficient to preserve the argument that the trial court's findings were insufficient to meet the statutory requirements for the admission of child hearsay); see also Mack v. State, No. 1D16-1829, 2017 WL 4699308, at *2 (Fla. 1st DCA Oct. 20, 2017) (holding that where "counsel never objected to the absence of an express finding on credibility . . . [he failed] to preserve the issue for appeal" and adding that the appellate court was "confident that the trial court would have made such a finding if it had been requested to do so").

The Second District was eminently correct when it termed the relief for error in this context—a new trial—"drastic."  Spencer, 196 So. 3d at 408.  Any error will have occurred at the very outset, during jury selection.  Following that, a jury of six or twelve citizens, and alternates, all found to be fair and impartial, will have been seated and will have dutifully carried out their civic responsibility for days or weeks—absenting themselves from their jobs, many times sacrificing income and disrupting their lives.  During those days or weeks of sacrifice, witnesses, including victims of crimes who are often faced with recounting painful and

difficult memories, will have been called to testify, also interrupting their lives.

Our state and local governments will have spent significant resources to staff our

courtrooms, all with the aim of securing justice and assuring that all parties receive

a fair trial—their invaluable opportunity to have their case decided by citizens

from their community—the hallmark of our Sixth Amendment right as citizens of

this constitutional republic. All of that sacrifice will have been for naught, and

must be repeated, if a new trial is ordered. As explained by the Second District:

> When an error results in this type of drastic relief, it is important that litigants not be allowed to trap or trick the trial judge into reversible error by failing to make objections or by making inadequate objections. Such an error should not be a matter of inadvertence. The trial court needs a full and fair opportunity to correct or avoid an error in the procedure before the jury is sworn.

Id.

For this ultimate reason, I would recede from the dicta in Hayes, reaffirm the

rules set forth in Floyd, and answer the certified question in the affirmative.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

Second District - Case No. 2D14-316

(Hillsborough County)

Howard L. "Rex" Dimmig, II, Public Defender, and Karen M. Kinney, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, John M. Klawikofsky, Bureau Chief, Marilyn Muir Beccue, and Bilal A. Faruqui, Assistant Attorneys General, Tampa, Florida,

for Respondent