DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY** and **PHILIP MORRIS USA, INC.**,
Appellants,

v.

**LINDA PURDO ENOCHS,** individually and as Personal Representative of
the Estate of **THOMAS PURDO,**
Appellee.

No. 4D16-2025

[August 16, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 50-2007-CA-024173-XXXX-MB.

Val Leppert, William L. Durham II and Jeffrey S. Bucholtz of King & Spalding LLP, Atlanta, GA, and Washington, DC, for appellant R.J. Reynolds Tobacco Company, and Geoffrey J. Michael of Arnold & Porter LLP, Washington, DC, for appellant Philip Morris USA, Inc.

John S. Mills and Courtney Brewer of The Mills Firm, P.A., Tallahassee, Alex Alvarez of The Alvarez Law Firm, Coral Gables, Gary M. Paige of Gordon & Doner, Davie, and David J. Sales of David J. Sales, P.A., Jupiter, for appellee.

DAMOORGIAN, J.

In this *Engle*[1] progeny case, R.J. Reynolds Tobacco Company and Philip Morris USA, Inc. ("Defendants") appeal the final judgment entered in favor of Linda Purdo Enochs as Representative of the estate of her deceased husband, Thomas Purdo ("Plaintiff"). Defendants argue that the trial court erred by: (1) failing to engage in the requisite genuineness analysis in granting Plaintiff's peremptory challenges to two prospective jurors; (2) misapplying the *Melbourne* analysis in granting Plaintiff's peremptory challenges as to two other prospective jurors; (3) allowing Plaintiff to misstate the law on *Engle* class membership; (4) denying their motion to remit the jury's compensatory awards to the Decedent's two surviving

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

children ($7 million each); and (5) applying the *Engle* findings in violation of Defendants' due process rights. We affirm on all counts and write only to address the failure to engage in the requite genuineness analysis issue.

During voir dire, Plaintiff was the first to use a peremptory challenge, striking prospective juror 18, a white male. Defendants objected based on gender and race grounds, prompting the following response:

> [PLAINTIFF]: He's a white male. I don't understand what –
>
> [COURT]: Everybody is a protected class under the case law.
>
> [PLAINTIFF]: Okay. Well, he's a smoker, and that's why I'm striking him, he's a smoker.
>
> [COURT]: All right. That's a gender-and-race-neutral reason. I will overrule defense objection.

Shortly thereafter, Plaintiff used a peremptory challenge to strike prospective juror 95, who was also a white male, and Defendants again objected on gender and race grounds, prompting the following response:

> [PLAINTIFF]: This is what [prospective juror 95] said when [defense counsel] asked him about the smoking history of his family members, do you think that the tobacco company is responsible, and instead of him saying no, I don't think they're responsible, you know what he said? He said zero.
>
> [COURT]: I heard that. . . . With an emphasis.
>
> [PLAINTIFF]: Yes.
>
> [COURT]: I heard it. Okay. That certainly satisfies the *Melbourne* test. I'm going to overrule . . . defense objection to [prospective juror 95].

At the end of the selection process and before the jury was sworn, Defendants renewed their objections to Plaintiff's peremptory challenges to prospective jurors 18 and 95. In again denying Defendants' objections, the trial court referenced the racial make-up of the venire and noted on the record that there were white males on the jury. This timely appeal follows.

In Florida, whenever a peremptory strike is challenged as discriminatory, the following three-part procedure must be employed:

> First, the objecting party must make a timely objection, show that the venire person is a member of a distinct protected group, and request that the court ask the striking party to provide a reason for the strike. Second, the burden shifts to the proponent of the strike to come forward with a race-neutral or gender-neutral explanation. Third, if the explanation is facially race-neutral or gender-neutral, the court must determine whether the explanation is a pretext "given all the circumstances surrounding the strike."

*Siegel v. State*, 68 So. 3d 281, 286 (Fla. 4th DCA 2011) (internal citations omitted) (quoting *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996)).

With regard to the third-step genuineness inquiry, "'[t]here is nothing in *Melbourne* which requires trial judges to articulate their thought process on the issue of pretext.'" *Id.* (quoting *Johnson v. State*, 706 So. 2d 401, 404 (Fla. 3d DCA 1998)). Nor are trial judges required to "specifically use the word 'genuine.'" *Hayes v. State*, 94 So. 3d 452, 463 (Fla. 2012). Nonetheless, "*Melbourne* does not relieve a trial court from weighing the genuineness of a reason just as it would any other disputed fact." *Dorsey v. State*, 868 So. 2d 1192, 1202 (Fla. 2003). Accordingly,

> "where a gender or race neutral reason was advanced for the strike, the reason advanced is itself reasonable, and the record is devoid of any indication that the trial judge considered the relevant circumstances surrounding the strike in concluding that it was motivated by improper purposes," an appellate court must conclude that the trial judge failed to adequately engage in the "genuineness inquiry" mandated by *Melbourne*.

*Siegel*, 68 So. 3d at 286 (quoting *Jones v. State*, 787 So. 2d 154, 157 (Fla. 4th DCA 2001)); *see also Cook v. State*, 104 So. 3d 1187, 1187–90 (Fla. 4th DCA 2012) (holding that the trial court's response of "I think it's race-neutral. So . . . I'll sustain the challenge," standing alone, was insufficient for the reviewing court to satisfy itself that the trial court engaged in the genuineness inquiry).

In the present case, it is undisputed that the trial court never used the word "genuine" when overruling Defendants' objections to prospective jurors 18 and 95. With that being said, however, the record overall reflects that the court did determine the proffered race-and-gender-neutral

reasons were genuine. Specifically, when Defendants re-raised their objections prior to the jury being sworn, the court referred to the racial make-up of the venire and noted on the record that there were white males on the jury. *See Siegel*, 68 So. 3d at 287 (listing the racial or gender make-up of the venire as one of the circumstances relevant to the genuineness inquiry); *Knight v. State*, 919 So. 2d 628, 633 (Fla. 3d DCA 2006) (rejecting defendant's argument that the court failed to satisfy the genuineness inquiry, reasoning that "the record reflects that four females were picked as jurors and two females were picked as alternates, which would support the trial court's decision that the peremptory challenge was not pretextual"). Moreover, in overruling the initial objection to prospective juror 95, the trial court noted that in responding "zero" when asked if he held the tobacco companies responsible for the smoking history of his family members, the answer was given "[w]ith an emphasis."

In light of the overall record and total course of the voir dire in this case, we are satisfied that the trial court did in fact engage in the genuineness inquiry in overruling Defendants' objections to prospective jurors 18 and 95. *See Wimberly v. State*, 118 So. 3d 816, 826 (Fla. 4th DCA 2012). In so holding, however, we emphasize that it is important for trial courts to make an on-the-record genuineness inquiry so as to permit meaningful appellate review. *See Hayes*, 94 So. 3d at 463.

*Affirmed.*

KUNTZ, J., and CYNAMON, ABBY, Associate Judge, concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

4