DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

**GEOVANI JOHNSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D15-4452, 4D15-4519 and 4D15-4539

[December 19, 2018]

Consolidated appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Kathleen McHugh, Judge; L.T. Case Nos. 13-011816CF10A, 13-012248CF10A and 14-013212CF10A.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fourth District, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, for appellee.

### ON MOTIONS FOR CLARIFICATION AND CERTIFICATION OF CONFLICT

CONNER, J.

We grant the State's motions for clarification and certification of conflict, withdraw our opinion dated August 22, 2018, and issue the following in its place:

Geovani Johnson ("Defendant") appeals his convictions and sentences from three cases. In two of the cases were violation of probation proceedings based on new charges filed in the third case. We consolidated the appeals. As to the new charges, Defendant contends the trial court erred by: (1) failing to conduct a proper *Melbourne*[1] analysis to a

---

[1] *Melbourne v. State*, 679 So. 2d 759 (Fla. 1996)

peremptory challenge by the State; and (2) violating Defendant's Sixth Amendment confrontation right by allowing the State to introduce a 911 call. We affirm on the Sixth Amendment issue without discussion. But because we agree the trial court did not comply with *Melbourne*, we reverse Defendant's convictions and sentences and remand for a new trial on the new charges. The ultimate question we answer in this case is whether the *Melbourne* procedure is *always* a three-step process, or a three-step process *if requested*. We determine that the *Melbourne* procedure is indeed always a three-step process. We affirm the trial court's judgment and sentences as to the violation of probation proceedings.

*Background*

In Case Nos. 13011816CF10A and 13012248CF10A, Defendant was charged with violating probation, based in part on three counts of robbery with a firearm and possession of a firearm by a convicted felon filed in Case No. 14013212CF10A. The new charges proceeded to a jury trial.

During jury selection, the State exercised a peremptory challenge on Juror No. 10, an African-American male. At Defendant's request, the trial court asked the state for a race-neutral reason for the strike. The State responded:

> The State does have a race-neutral reason. [Juror No. 10] indicated that he would prefer CSI evidence.[2] Additionally, the Defense has stricken two black females in their first round of strikes. They've also stricken black individuals for cause. And this is --

Cutting off the State, the trial court stated: "All right. Okay. I find that to be [a] race-neutral reason. I'm going to uphold State's use of a peremptory on [Juror No. 10]." Defendant did not make any further objection or argument at that time. However, at the conclusion of the jury selection process, when asked if each side accepted the panel of jurors, the defense advised the panel was not acceptable, in part because the trial court "denied my *Melbourne vs. State* objection to the State striking [Juror No. 10]."

The jury found Defendant guilty of three counts of robbery with a weapon, lesser-included offenses, and not guilty of possession of a firearm by a convicted felon. The court entered judgment and sentenced Defendant to concurrent prison terms for the three robberies. The trial

---

[2] "CSI" refers to the television show Crime Scene Investigation.

court revoked Defendant's probation in the other two cases and imposed sentences in those cases.  Defendant gave notice of appeal.

*Appellate Analysis*

We review a trial court's decision to uphold or deny a peremptory challenge for abuse of discretion.  *Truehill v. State*, 211 So. 3d 930, 942 (Fla. 2017).  As a reviewing court, we must presume that peremptory challenges are exercised in a nondiscriminatory manner.  *Poole v. State*, 151 So. 3d 402, 409 (Fla. 2014).

"Under Florida law, a party's use of peremptory challenges is limited only by the rule that the challenges may not be used to exclude members of a 'distinctive group.'"  *San Martin v. State*, 705 So. 2d 1337, 1343 (Fla. 1997).

> [T]o strike the appropriate balance between a party's right to exercise peremptory challenges and the attempt to eliminate invidious discrimination in juror selection, [our supreme court] in *Melbourne* enunciated a three-step *procedure* to be followed when a party objects to the exercise of a peremptory challenge on the ground that it was made on [an improper] discriminatory basis.[[3]]

*Hayes v. State*, 94 So. 3d 452, 460-61 (Fla. 2012) (emphasis added).  Based on the United States Supreme Court's holdings in *Batson v. Kentucky*, 476 U.S. 79 (1986) and *Purkett v. Elem*, 514 U.S. 765 (1995), and *Neil-Slappy*[4] case law, the procedure was stated as consisting of three steps:

> Step 1:   Objection and Prima Facie Case
> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis; b) show that the venireperson is a member of a distinct protected group; and c) request that the court ask the striking party its reason for the strike.

---

[3] In *Melbourne,* the Court stated that *State v. Neil*, 457 So. 2d 481 (Fla. 1984) was "[a] seminal Florida case . . . wherein this Court set out a *procedure* for dealing with racially-motivated peremptory challenges."  *Melbourne*, 679 So. 2d at 763 (emphasis added).

[4] *State v. Neil*, 457 So. 2d 481 (Fla. 1984); *State v. Slappy*, 522 So. 2d 18 (Fla. 1988).

> Step 2: Race-Neutral Explanation
> The court must then ask the proponent of the strike to explain the reason for the strike. At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.
>
> Step 3: Determination of Genuineness
> If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained. The court's focus here is not on the reasonableness of the explanation but rather its genuineness.

*See Melbourne*, 679 So. 2d at 763-64; *Hayes*, 94 So. 3d at 461. In interpreting the true scope of the *Melbourne* procedure, we will rely on case law generated by *Batson* and *Purkett* and its progeny, especially two decisions from the United States Supreme Court.

Step 3 of the *Melbourne* (*Batson*) Procedure

Defendant's appeal focuses on Step 3 of the *Melbourne* procedure. Relying on *Hayes*, Defendant contends the record does not support a conclusion that the trial court properly conducted Step 3. Specifically, Defendant argues the trial court did not review, analyze, or conduct any "judicial assessment" of the reasons given by the State for striking Juror No. 10; instead, the trial court summarily ratified the peremptory challenge. Additionally, Defendant argues the "cold record" is "devoid of any indication" that the trial court "considered or weighed *any* relevant circumstances in deciding whether the State's strike was discriminatory."

The State responds, arguing a lack of preservation because Defendant failed to raise an issue of noncompliance with *Melbourne* below. As to the merits of Defendant's arguments, the State also relies on *Hayes*, contending that when a defendant objects to the State's exercise of a peremptory challenge, and the trial court upholds the strike, the defendant carries the burden of persuasion that the State's strike was exercised in a discriminatory manner. The State contends the record shows the trial court complied with Step 3. Relying on *Lidiano v. State*, 967 So. 2d 972, 975 (Fla. 3d DCA 2007), the State argues that "[t]he trial court is not required to orally perform its genuineness analysis or to articulate the basis for its ruling." Moreover, the State contends that because it pointed out, in providing its race-neutral reason for striking Juror No. 10, that the defense had stricken two black females in the defense's first round of strikes, after the State had twice accepted the jury panel including those

jurors, the record reflects that the trial court was aware of and considered the circumstances relevant to determining if a strike was improperly discriminatory and implicitly found there was no pretext in the strike.

*Spencer v. State*

*Melbourne* was decided in 1996. Twenty-two years later, courts still struggle with its proper application. Over the years, the case law has focused increasingly on Step 3 of the *Melbourne* procedure. The unresolved troublesome aspects of what Step 3 means and what it involves is perhaps best demonstrated by our supreme court's most recent opinion on the subject, *Spencer v. State*, 238 So. 3d 708 (Fla. 2018) ("*Spencer II*"). The *Spencer II* opinion reveals a divided court on the issue of the preservation requirements for a *Melbourne* noncompliance claim. Ultimately, all of the justices agreed with the Second District that Spencer's conviction should not be reversed for noncompliance with *Melbourne*. In a plurality opinion, three justices agreed the *Melbourne* noncompliance claim was preserved. *Id.* at 718. Two justices concurred in result, with an opinion disagreeing that the claim was preserved, suggesting that the court recede from language in *Hayes*, and readopt the court's prior preservation reasoning in *Floyd v. State*, 569 So. 2d 1225 (Fla. 1990). *Id.* at 719-20 (Lawson, J., concurring in result). Two justices concurred in result without an opinion. *Id.* at 718.

In *Spencer II,* the supreme court considered a certified question from the Second District. *Id.* 3d at 711. On direct appeal, the Second District upheld Spencer's conviction, determining that his claim that the trial court did not comply with Step 3 of *Melbourne* was not preserved. *Spencer v. State*, 196 So. 3d 400, 401 (Fla. 2d DCA 2016) ("*Spencer I*"). As to one prospective juror, Spencer never asserted the State's reason for the strike was a pretext. *Id.* at 410. As to the other prospective juror, Spencer did not object to the manner in which the trial court conducted the *Melbourne* procedure. *Id.* The Second District opined that the trial court was not required to perform a full genuineness analysis on the record every time a party initiates a *Melbourne* challenge, and if the opponent of the strike wants the trial court to determine the genuineness of the reason proffered for the strike, the opponent "must expressly make a claim of pretext and at least attempt to proffer the circumstances that support its claim." *Id.* at 401. After conducting an extensive analysis of the law regarding Step 3, the Second District wrote: "It is true that the trial courts must make the three decisions required by *Melbourne* **if requested**, but the parties are not entitled to sit back and have the court go through this process for them." *Id.* at 409 (bold emphasis added).

The Second District certified a three-part question of great public importance:

> During a *Melbourne* hearing, when a trial court finds that the proponent's reason for a peremptory challenge is facially neutral, is it the burden of the opponent (1) to claim the reason is a pretext, (2) to place into the record the circumstances supporting its position, and (3) to object if the trial court's ruling does not contain adequate findings on the issue of genuineness?

*Id.* at 411.

The plurality opinion of the supreme court began its analysis with the observation that, "[t]he real issue presented here is whether our decision in *Melbourne* requires a trial court to strictly adhere to the procedure as outlined in *Melbourne* and its progeny." *Spencer*, 238 So. 3d at 711. Rejecting the elevation of form over substance, the plurality agreed with the Second District that strict adherence to the *Melbourne* procedure is not required. *Id.* The plurality sought "to clarify that preservation of an issue under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not require anything more than what we have previously articulated," citing *Melbourne* and *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993). *Id.*

After discussing a progression of case law from 1984 to 2004,[5] the plurality then discussed some of the pronouncements in the Court's 2012 *Hayes* opinion. *Id.* at 712-15. Critical to its position, the plurality relied on two statements in *Hayes*:

> [W]here the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court.

and

---

[5] In chronological order, the cases discussed were: *Neil*; *Batson*; *Slappy*; *Floyd*; *Joiner*; *Purkett*; *Melbourne*; *Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000); and *Dorsey v. State*, 868 So. 2d 1192 (Fla. 2003).

We emphasize that under the final step, the step at issue in this case, if the proponent's reason for the challenge is race-, ethnicity-, or gender-neutral, then the trial court should inquire of the opponent of the strike.

*Id.* at 715 (quoting *Hayes*, 94 So. 3d at 463, 467). Immediately thereafter, the plurality said:

Spencer argues that this Court should answer the certified question in the negative because the third step of *Melbourne*, like *Batson*, is a decisional step where the trial judge evaluates the parties' persuasiveness after considering all relevant circumstances. Spencer argues that the preservation occurs in step one that can only be waived as articulated in *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993), by failing to renew objections before the jury is empaneled. Alternatively, the State argues that because the opponent of a peremptory strike bears the burden of persuasion, that burden should include expressly stating a claim of pretext and presenting facts and argument to support such a claim. *We agree with both arguments.*

*Id.* (emphasis added) (footnote omitted). In rejecting the Second District's opinion regarding preservation, the plurality said:

Although the Second District acknowledges that "[i]t is unquestionably the better practice for the trial court, having made a determination of neutrality under step 2 of the *Melbourne* analysis, to ask the opponent whether he or she wishes to challenge the genuineness of the proponent's reason," it nevertheless holds that there is "no reason to reverse a judgment and sentence following an entire trial when the trial court omits this step without objection from anyone." *Spencer*, 196 So. 3d at 407. We disagree with this statement because it is contradictory to the plain language of *Hayes*. *Hayes*, 94 So. 3d at 461 ("Compliance with each step [of *Melbourne*] is not discretionary, and the proper remedy when the trial court fails to abide by its duty under the *Melbourne* procedure is to reverse and remand for a new trial.").

While we were not "abandoning requirements for full preservation in *Hayes*," *Spencer*, 196 So. 3d at 408, *Hayes* provides that *the trial court has a duty to perform the correct*

7

*legal analysis independent of trial counsel's duty. Hayes*, 94 So. 3d at 465 ("Since the reason defense counsel offered was facially gender neutral, the trial court was then required to engage in step three—the genuineness analysis."); *see also Batson*, 476 U.S. at 98, 106 S.Ct. 1712 (after the prosecution articulates a neutral explanation "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination."); *Slappy*, 522 So. 2d at 22 ("[A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact."). *Here, the trial judge performed his duty when he requested a response from defense counsel immediately after the State provided its purported race-neutral reason and before the trial court ruled on the genuineness of the reason.*

*Id.* at 716 (alterations in original) (emphases added). Upon that reasoning, the plurality concluded the trial court complied with the *Melbourne* procedure and affirmed the Second District's conclusion there was no reversible error. *Id.* at 718.

While concurring with the result, the concurring opinion viewed some of the principles discussed in *Hayes* and relied upon by the plurality as dicta. *Id.* at 718-20, 724 (Lawson, J., concurring in result). Rejecting the dicta, the concurring opinion relied on principles discussed in *Floyd*, which requires the opposing counsel to challenge the proffered race-neutral explanation to preserve the issue. *Id.* at 718. The concurring opinion felt it was time to resolve the seeming conflict between *Floyd* and *Hayes*, and asserted the Court should recede from the dicta in *Hayes. Id.* at 720.

Although the concurring opinion did not expressly adopt the "if requested" language of the Second District in *Spencer I*, the concurring opinion appears to have asserted that approach. The concurring opinion stated three reasons for agreeing with the Second District. *Id.* In stating the second reason, the concurring opinion wrote:

> Second, contrary to the assertion in *Hayes, the trial judge does not need to "undertake an on-the-record genuineness inquiry" in the absence of any challenge* to the race-neutral reason to allow for "meaningful appellate review." As explained in *Melbourne, if the opponent of the strike does not make a record* from which the trial court's decision can be

challenged on appeal as "clearly erroneous," the trial judge's ruling "will be affirmed."

*Id.* at 721 (emphases added) (citation omitted).

Post-*Spencer* Analysis

Until a majority opinion by our supreme court says otherwise, in this District, we contend there arguably is no conflict between *Hayes* and *Floyd*. We further hold that the *Melbourne* procedure is indeed a three-step process, and the intent of our supreme court, in adopting the procedure, was to require that all the steps be followed. We reject the notion that the three-steps are required only "if requested."

Our premise is that the three-step procedure stated in *Melbourne* is analogous to the procedures used by the judiciary to address claims of discovery violations during a criminal trial and assertions of the defendant's incompetence to proceed in criminal prosecutions.

When a claim is made during a criminal trial that there has been a discovery violation, the trial court must engage in a process of analysis, regardless of whether the proponent of the objection requests a *Richardson*[6] hearing. *Jones v. State*, 32 So. 3d 706, 710-11 (Fla. 4th DCA 2010) (determining that the *Richardson* hearing requirement applies to a *possible* discovery violation, even if the defendant does not request a *Richardson* hearing). Likewise, if a defendant in a criminal prosecution makes an initial showing of incompetence to proceed, the trial court must take certain steps before proceeding, regardless of whether the defendant pursues the matter or not. *Dougherty v. State*, 149 So. 3d 672, 677-78 (Fla. 2014) (determining that once a trial court has reasonable grounds to believe the defendant is incompetent and orders an examination, failure to make an independent determination regarding a defendant's competency to stand trial is reversible error); *Dortch v. State*, 242 So. 3d 431, 433 (Fla. 4th DCA 2018) (determining that once a trial court has reasonable grounds to believe the defendant is incompetent and orders an examination, failure to hold a hearing constitutes fundamental error which can be addressed for the first time on appeal). The rationale for imposing such duties on the trial court is to assure the integrity and rudimentary fairness of the proceedings (prohibiting trial by ambush or criminally punishing someone who is incompetent).

---

[6] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

In our view, elements of the *Melbourne* procedure impose a duty on trial courts, separate and apart from the duties of the advocates, for similar reasons. That is to say, *Melbourne* imposes some procedural requirements as a *duty* on trial courts that do not require objections at each step to preserve the matter for appellate review; however, with regards to *factual accuracy of assertions by the proponent* of a peremptory strike, the standard preservation requirements apply.

We conclude that at a minimum, *Melbourne* imposes a duty on trial courts at Step 3 to request a response to the proffered explanation from the opponent of a peremptory challenge once Step 2 has been completed. We continue to adhere to our prior case law that "the *Melbourne* procedure does not require the trial court to recite a perfect script or incant specific words in order to properly comply with its analysis under [S]tep [3]." *Denis v. State*, 137 So. 3d 583, 586 (Fla. 4th DCA 2014) (citing *Hayes*, 94 So. 3d at 463). We continue to agree with the plurality opinion in *Spencer II* that:

> [W]here the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court.

*Spencer*, 238 So. 3d at 715 (quoting *Hayes*, 94 So. 3d at 463); *see also R.J. Reynolds Tobacco Co. v. Enochs*, 226 So. 3d 872, 874 (Fla. 4th DCA 2017) (same); *West v. State*, 168 So. 3d 1282, 1285 (Fla. 4th DCA 2015) (same); *Denis*, 137 So. 3d at 586 (same); *Burgess v. State*, 117 So. 3d 889, 891 (Fla. 4th DCA 2013) (same); *King v. State*, 106 So. 3d 966, 968 (Fla. 4th DCA 2013) (same); *Victor v. State*, 126 So. 3d 1171, 1172 (Fla. 4th DCA 2012) (same); *Cook v. State*, 104 So. 3d 1187, 1190 (Fla. 4th DCA 2012) (same).[7] Also relying on *Hayes*, we have said that "[c]ompliance with each step [of the *Melbourne* procedure] is not discretionary, and the proper remedy when the trial court fails to abide by its duty under the *Melbourne* procedure is to reverse and remand for a new trial." *King*, 106 So. 3d at 968 (quoting *Hayes*, 94 So. 3d at 461); *see also Welch v. State*, 992 So. 2d

---

[7] The dissent points out that these cases do not involve "a situation in which counsel for the defendant failed to challenge the race-neutral reason." However, the cases are cited as support for the quote and not to specifically negate the premise that *Melbourne* requires three steps only if the opponent of the strike continually makes specific objections about the procedure.

206, 212 (Fla. 2008) (determining a failure to follow *Melbourne* procedure constitutes reversible error).

As mentioned, however, we also continue to adhere to our prior case law that the opponent of a peremptory challenge *who contests the factual assertions* on which the strike is based must comply with the usual requirements for preservation. *See Hoskins v. State*, 965 So. 2d 1, 9 (Fla. 2007) (stating that the defendant's failure to question the facts on which the strike was based waived the issue for review); *Denis*, 137 So. 3d at 585; *Doe v. State*, 980 So. 2d 1102, 1104 (Fla. 4th DCA 2008) (affirming the trial court's decision to sustain the peremptory strike because "[d]efense counsel did not challenge the facts on which the strikes were based and thus failed to preserve this issue for appellate review").

Like the plurality opinion in *Spencer II*, we disagree with the Second District's premise that "[i]t is true that the trial courts must make the three decisions required by *Melbourne* **if requested**. . . ." *Spencer*, 196 So. 3d at 409 (bold emphasis added). In our view, such a premise suggests, at best, that only the first two steps of the *Melbourne* procedure are mandatory.[8] Such a premise ignores that Step 3, in our view, is the penultimate decision and *raison d'etre* for the analysis. Without Step 3, the protection against an improper discriminatory peremptory challenge is lost.

The primary problem with the assertion that the *Melbourne* procedure does not always have to be a three-step process is that it ignores what we deem to be key language in United States Supreme Court case law, starting with *Purkett*. The discussion of the facts in *Purkett* does not make it clear what response, if any, Purkett made when the state proffered its race-neutral reasons for the preemptory strikes against two black men. What is clear is that the Supreme Court said:

> If a race-neutral explanation is tendered, the trial court *must then decide* (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett*, 514 U.S. at 767 (emphasis added). Additionally, the Court wrote: "The Court of Appeals erred by combining *Batson's* second and third steps into one. . . ." *Id.* at 768. Such language indicates that each of the three steps are independently vital and significant.

---

[8] However, the Second District's opinion could also be read to mean that compliance with Step 2 is not mandatory unless requested.

Perhaps the strongest argument to be made that the *Melbourne* procedure is a three-step process that does not require the preservation requirements asserted by the Second District, the concurring opinion in *Spencer,* and the dissent in this case, comes from a review of United States Supreme Court case law subsequent to *Purkett.* Two opinions are pertinent to our analysis: *Johnson v. California*, 545 U.S. 162 (2005); and *Foster v. Chatman,* 136 S.Ct. 1737 (2016). From a review of those two cases, it does not appear that the Supreme Court requires a *specific preservation argument* to be made to prevail on a *Batson* challenge; instead, the challenge can be upheld years later, based on the appellate record.

In *Johnson,* although the Court addressed Step 1 of the *Batson* analysis, it is persuasive here. Johnson was convicted of second degree murder by a California jury. *Johnson,* 545 U.S. at 164. At trial, he asserted a race-based challenge to the state's preemptory strikes of black prospective jurors. *Id.* at 165. The trial court did not ask the prosecutor to explain the rationale for his strikes; instead, the trial court simply found that Johnson had failed to establish a *prima facie* case of discrimination under the governing state precedence. *Id.* The Supreme Court began its analysis by pointing out that in *Batson,* the Court remanded the case for further proceedings because the trial court failed to demand an explanation from the prosecutor for the preemptory challenge. *Id.* at 169-70. The Court then wrote:

> [I]n describing the burden-shifting framework, we assumed in *Batson* that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated.

*Id.* at 170. After referencing the *Batson* requirement that the opponent of the strike carries the burden of persuasion, the Court then wrote:

> [E]ven if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end— it merely proceeds to step three. The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim.

*Id.* at 171 (footnote omitted) (internal citation omitted). The Court then opined:

The three-step process thus simultaneously serves the public purposes *Batson* is designed to vindicate and encourages "prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process."

*Id.* at 172-73 (quoting *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991)). Although it is not clear from the opinion that preservation was raised as an issue in the case, what is clear is that the Supreme Court envisioned the first two steps of the *Batson* procedure as the steps involving the *production of evidence* in order for the trial court to conduct a proper analysis in the third step. It seems implicit in the Supreme Court's reasoning that if a specific preservation objection is required, then it would have addressed the issue of Johnson's failure to object and secure a ruling as to Step 2, and conclude the *Batson* challenge was properly denied by the trial court.

In *Foster*, the Supreme Court granted certiorari review of a Georgia death penalty conviction and sentence. *Foster*, 136 S.Ct. at 1743. There, the state exercised nine of its ten allotted peremptory strikes, removing four black prospective jurors. *Id.* Foster immediately lodged a *Batson* objection, which was rejected by the trial court. *Id.* After the judgment and sentence was upheld by the Georgia Supreme Court, Foster sought habeas relief in state court. *Id.* During the state court habeas proceedings, Foster obtained a series of documents from the prosecution files, clearly suggesting the prosecutor's office used race in evaluating which prospective black jurors would be subject to a preemptory strike. *Id.* at 1744-45. The state court denied habeas relief based on *res judicata*. *Id.* at 1745.

Because both sides conceded that Steps 1 and 2 of *Batson* had been met, the Supreme Court addressed only Step 3. *Id.* at 1747. Foster focused his *Batson* claim on two prospective jurors, for whom the state proffered multiple reasons during trial for the strike as to both. *Id.* at 1748. As to one of the stricken prospective jurors, for whom the state offered eleven reasons for the strike, the Court noted that the trial court accepted the state's justifications, concluding that "'[i]n the totality of circumstances,' there was 'no discriminatory intent, and that there existed reasonably clear, specific, and legitimate reasons' for the strike." *Id.* at 1748-49 (alteration in original). However, based on the Court's independent examination of the record, it concluded that much of the reasoning provided by the state "ha[d] no grounding in fact." *Id.* at 1749.

As to the second prospective juror, for whom the state proffered eight reasons for the strike, the Court noted that the state's reasons for the

strike were inconsistent before the trial court, focusing its argument on only one concern, and the state's justification for the strike shifted over time in the post-trial proceedings. *Id.* at 1751-52. The Court also observed that many of the state's justifications "come undone when subjected to scrutiny." *Id.* at 1753. Additionally, as to both stricken prospective jurors, the Court noted that many of the proffered reasons applied to white prospective jurors, for whom the state did not exercise a strike. *Id.* at 1750. Thus, the Supreme Court reversed the conviction and remanded the case for further proceedings. *Id.* at 1755.

What is instructive about *Foster* is that the Supreme Court determined there was a *Batson* violation on proffered reasons for a preemptory strike that "[came] undone" after an extensive review of the record. If objections were made discussing any details regarding the proffered explanations, it is likely the Court would have discussed the objections or alluded to them. Because there is no discussion of such points, it appears the United States Supreme Court does not impose a *specific objection* in order to conduct an appellate review of the trial court's compliance with *Batson.*

The Dissent's Analysis

The dissent cites ten cases in support of its contention that *Melbourne* does not always require three steps, but does require a specific objection to preserve a claim of pretext. However, four of the cases were decided before *Purkett.*[9] Prior to *Purkett*, the contention that *Batson* requires three

---

[9] The four cases are: *United States v. Arce*, 997 F.2d 1123 (5th Cir. 1993); *Hopson v. Fredericksen*, 961 F.2d 1374 (8th Cir. 1992); *United States v. Bennett*, 928 F.2d 1548 (11th Cir. 1991); and *United States v. Rudas*, 905 F.2d 38 (2d Cir. 1990).

*Arce* is not helpful to the analysis because it relies on *Rudas*, which is discussed below. 997 F.2d at 1127.

*Hopson* is not helpful to the analysis because the issue was the failure of the judge to articulate the reason for overruling the *Batson* objection. 961 F.2d at 1377-78. Neither the United States Supreme Court nor the Florida Supreme Court has ever imposed such a requirement.

In *Bennett*, the Fifth Circuit held that "the government's articulated reasons are not pretextual *as a matter of law.* Opportunity to rebut the government's reasons would therefore have been to no avail. Consequently, we need not address Bennett's secondary argument [that the trial court failed to allow Bennett to rebut the explanation] at this juncture." *Bennett*, 928 F.2d at 1550 n.1. Clearly, the theory of waiver approved by the Fifth Circuit is questionable, given its conclusion that articulated reasons are not pretextual as a matter of law.

steps was only approved by the plurality opinion in *Hernandez*. Additionally, in *Hernandez*, the Court said "[o]nce a prosecutor has offered a race-neutral explanation for peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of intentional discrimination becomes moot." *Hernandez*, 500 U.S. at 359. As discussed below, that language was erroneously interpreted to mean that once a trial court rules on a *Batson* objection, even without determining if the proffered reasons are genuine, the *prima facie* showing of intentional discrimination becomes moot.

The case which appears to be the strongest support for the dissent's position is *Davis v. Baltimore Gas & Electric Company*, 160 F.3d 1023 (4th Cir. 1998), in which the Fourth Circuit said: "The court has no obligation to guide the movant, step-by-step, through the requirements of his own objection." *Id.* at 1028. However, *Davis* does not mention *Purkett* at all, and instead, misapplied *Hernandez*, which also predated *Purkett*. *Id.* at 1026-27.

Immediately after stating the quote from *Hernandez* discussed above, the Fourth Circuit said:

> Fourth Circuit law endorses the Supreme Court's holding in *Hernandez*. Prior to the Court's pronouncement in *Hernandez*, the Fourth Circuit held that when racially neutral reasons are proffered, it is unnecessary to determine whether a prima facie case was actually demonstrated. So, since Defendant volunteered racially neutral reasons for its strikes, the prima facie determination is moot.

*Davis*, 160 F.3d at 1027 (internal citations omitted). In other words, the Fourth Circuit completely ignored Step 3 discussed in *Hernandez* (which *Purkett* amplified further) to conclude that a racially neutral proffered explanation ends the *Batson* inquiry.

The remainder of the cases cited by the dissent are also unpersuasive, because in those cases, either the trial court gave the opponent of the

---

The problem with *Rudas* is that the Second Circuit asserted that "[o]nce the Government has offered reasons for its peremptory challenges, defense counsel must expressly indicate an intention to pursue the *Batson* claim," *with no citation of authority*. 905 F.2d at 41.

strike the opportunity to respond,[10] or at least, there is not enough information to determine whether the trial court did,[11] or the cases do not rely on *Purkett* and rely on pre-*Purkett* cases.[12]

The dissent voices a legitimate concern that "the goal has become the process." Justice O'Connor may have expressed the fear best when she observed that by "constitutionalizing jury selection procedures . . . jury selection—once a sideshow—will become the main event." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 147 (1994) (O'Connor, J., concurring). Nonetheless, it must be remembered that the procedure espoused by *Batson* by a majority of the Supreme Court and adopted in *Melbourne* "was designed *'to serve multiple ends,' only one of which was to protect individual defendants from discrimination in the selection of jurors.*" *Georgia v. McCollum*, 505 U.S. 42, 48 (1992) (emphasis added) (quoting *Powers v. Ohio*, 499 U.S. 400, 406 (1991)). As can be seen from the Supreme Court's application of *Batson*, much more is involved than a concern about Equal Protection under the Constitution. *Batson* not only preserves Equal Protection, but also Due Process, and the Sixth Amendment right to a trial by a fair jury.

In *Powers*, the Supreme Court addressed the issue of whether *Batson* applied when a white defendant sought to challenge the state's use of peremptory challenges to exclude black potential jurors. 499 U.S. at 403. In the first paragraph of the opinion, the Court said:

> In the many times we have confronted the issue since those cases [referring to three cases construing the Civil Rights Act of 1875], we have not questioned the premise that *racial discrimination in the qualification or selection of jurors offends* the dignity of persons and *the integrity of the courts.*

*Id.* at 402 (emphases added). The majority in *Powers* went on to say: "Jury service preserves the democratic element of the law, as it guards the rights of the parties and ensures continued acceptance of the laws by all of the people." *Id.* at 407. The majority concluded that "*Batson* recognized that a prosecutor's *discriminatory use of peremptory challenges harms* the excluded jurors and *the community at large.*" *Id.* at 406 (emphases added). The notion that *Batson* was intended to avoid "offend[ing] . . . the integrity

---

[10] *United States v. Vann*, 776 F.3d 746 (10th Cir. 2015); *State v. Washington*, 288 S.W.3d 312 (Mo. Ct. App. 2009); *Adair v. State*, 336 S.W.3d 680 (Tex. Crim. App. 2010).

[11] *Wright v. Harris Cty.*, 536 F.3d 436 (5th Cir. 2008); *People v. Alvarado*, 759 N.Y.S.2d 659 (N.Y. App. Div. 2003).

[12] *Wright*, 536 F.3d at 436; *United States v. Jackson*, 347 F.3d 598 (6th Cir. 2003).

of the courts" and "harm" to "the community at large" was grounded upon the following statement in *Batson*:

> The petit jury has occupied a central position in our system of justice by safeguarding a person accused of crime against the arbitrary exercise of power by prosecutor or judge.

*Batson*, 476 U.S. at 86 (citing *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968)), and in a footnote, where the Court said:

> In *Duncan v. Louisiana* . . . the Court concluded that the right to trial by jury in criminal cases was such a fundamental feature of the American system of justice that it was protected against state action by the Due Process Clause of the Fourteenth Amendment. The Court emphasized that a defendant's right to be tried by a jury of his peers is designed "to prevent oppression by the Government." For a jury to perform its intended function as a check on official power, it must be a body drawn from the community. By compromising the representative quality of the jury, discriminatory selection procedures make "juries ready weapons for officials to oppress those accused individuals who by chance are numbered among unpopular or inarticulate minorities."

*Id.* n.8 (internal citations omitted).

In *McCollum*, the Supreme Court addressed the issue of whether the Constitution prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges. 505 U.S. at 44. There, three white defendants were charged with aggravated assault and simple battery against two black victims. *Id.* In holding that the Constitution prohibits criminal defendants from using race for a peremptory challenge, the Supreme Court again relied on the premise that *Batson* was designed to serve "multiple ends," including protecting the "integrity of the courts." *Id.* at 48. As part of the rationale for its holding, the Court said:

> "[B]e it at the hands of the State or the defense," if a court allows jurors to be excluded because of group bias, "[it] is [a] willing participant in a scheme that could only undermine the very foundation of our system of justice—our citizens' confidence in it. Just as public confidence in criminal justice is undermined by a conviction in a trial where racial discrimination has occurred in jury selection, so is public

confidence undermined where a defendant, assisted by racially discriminatory peremptory strikes, obtains an acquittal.

*Id.* at 49-50 (alterations in original) (internal citation omitted).

Finally, we disagree with the dissent's contention, agreeing with the Second District and the concurring opinion in *Spencer II*, that *Hayes* and the plurality opinion in *Spencer II* cast the trial judge as an advocate by imposing a duty to ask the opponent of a peremptory strike to respond to the proffered explanation for the strike. Although a trial court judge must be impartial, "[t]his fundamental precept does not foreclose a trial judge from asking questions to ascertain the truth or to clarify issues." *Gerali v. State*, 50 So. 3d 727, 729 (Fla. 5th DCA 2010). It is not uncommon for trial court or appellate judges to ask questions of an advocate to test the strength of an argument. Judges are trained in the skills of neutrality, and we are confident that trial courts can engage in conducting a factual determination without becoming advocates, if questioning is needed to make a factual determination of pretext.

The "multiple ends" the *Batson-Melbourne* procedure was designed to achieve should not be thwarted by the preservation requirements the dissent seeks to impose. It is reasonable and appropriate to impose some duty on the trial court to accomplish the "multiple ends."

Applying the *Melbourne* Procedure to This Case

In the instant case, we conclude the cold record is devoid of any indication that the trial court considered circumstances relevant to whether the peremptory challenge was exercised for a discriminatory purpose. Unlike *Spencer II*, it is clear that the trial court did not request a response by Defendant to the explanation proffered by the State for the peremptory challenge. Instead, the trial court cut off the State while it was proffering its explanation for the strike and justification for its genuineness, and brought the analysis to an end with the statement, "All right. Okay. I find that to be race-neutral reason. I'm going to uphold State's use of a peremptory on [Juror No. 10]." On the record presented, we simply cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court. *See Landis v. State*, 143 So. 3d 974, 978 (Fla. 4th DCA 2014) ("If the record lacks any indication that the trial court considered the totality of the circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a

genuineness inquiry was actually conducted and give deference to the trial court.").

The State asks us to infer that the trial court complied with Step 3 because it pointed out to the trial court, in providing its race-neutral reason for striking Juror No. 10, that the defense had stricken two black females in the defense's first round of strikes, after the State had twice accepted the jury panel with those jurors. The State contends that the record reflects the trial court was aware of and considered the circumstances relevant to determining if the strike was improperly discriminatory and implicitly found there was no pretext in the strike. We decline the invitation because the trial court cut off the State before it could point out that it had twice accepted the jury panel with those jurors when it exercised two peremptory challenges. We are satisfied that once the trial court decided the explanation was race neutral, it determined no further analysis was needed. In other words, the trial court prematurely curtailed the procedure.

Because the trial court failed to comply with the duty imposed by Step 3 of the *Melbourne* procedure, we reverse the conviction and sentence, and remand the case for a new trial as to the robbery counts in Case No. 14013212CF10A. The violation of probation proceedings in the other two cases were tried without a jury, thus the error regarding jury selection does not affect the adjudication that Defendant violated probation in those cases. We affirm the adjudications and sentences imposed in Case Nos. 13011816CF10A and 13012248CF10A.

We further determine that our opinion in this case regarding the procedure for a *Melbourne* challenge conflicts with the opinions in *Brown v. State*, 204 So. 3d 546 (Fla. 5th DCA 2016), *Ivy v. State*, 196 So. 3d 394 (Fla. 2d DCA 2016), and *Hanna v. State*, 194 So. 3d 424 (Fla. 3d DCA 2016), because those cases continue to adhere to the analysis of the Second District in *Spencer I*. Thus, we certify conflict with those decisions.

*Reversed and remand for further proceedings.*

WARNER, J., concurs.
KUNTZ, J., dissents with opinion.

KUNTZ, J., dissenting.

After the State used a peremptory challenge on Juror No. 10, counsel for the Defendant stated, "Your Honor, may I -- For the record, my client is a member of the African American class and we want-, pursuant to

*Melbourne vs. State*, the State to offer a race neutral reason for" the strike. The State responded, stating that Juror No. 10 "indicated he would prefer 'CSI evidence.' Additionally, the Defense has stricken two black females in the first round of strikes. They've also stricken black individuals for cause." Both the Defendant and defense counsel remained quiet before and after the court stated, "All right. Okay. I find that to be a race-neutral reason. I'm going to uphold the State's use of a peremptory on [Juror No. 10]."

The State's stated reason was true. During voir dire, when asked whether he could convict a defendant without DNA evidence, Juror No. 10 stated, "[I]t depends on the case." While his answer was more nuanced than a simple preference for DNA evidence, the Defendant did not challenge the reason offered by the State. I would conclude the Defendant's silence in response to the State's facially sound reason for striking Juror No. 10 constituted a waiver of the challenge. I would affirm the conviction and respectfully dissent.

The ultimate issue here is whether a party must raise an issue to the trial court; or, alternatively, whether a party can sit silently and require the trial court to advocate on his or her behalf. The issue relates to the multi-step process for challenging the use of a peremptory challenge.

In 1986, the United States Supreme Court examined "the evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the State's use of peremptory challenges to exclude members of his race from the petit jury." *Batson v. Kentucky*, 476 U.S. 79, 82 (1986). *Batson* and its progeny have established a three-part test to determine whether a party grounded its use of a peremptory strike in a racially discriminatory manner. "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Batson*, 476 U.S. at 93-94). Second, if the defendant makes a prima facie case, "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Batson*, 476 U.S. at 94). Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995).

Even before *Batson*, our state supreme court had established a procedure aimed at preventing racially motivated peremptory challenges. *See, e.g., State v. Neil*, 457 So. 2d 481 (Fla. 1984), *later clarified in State v. Johans*, 613 So. 2d 1319 (Fla. 1993) and *State v. Slappy*, 522 So. 2d 18

(Fla. 1988).  Because of difficulty applying those decisions, and because of *Batson* and *Purkett,* the court resolved to address the issue again in *Melbourne v. State,* 679 So. 2d 759 (Fla. 1996), explaining each step of the three-step process:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
>
> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.

*Id.* at 764 (footnote omitted).

In my opinion, and based on the foregoing case law, a party challenging the use of the other's peremptory strike must object during the *Batson-Melbourne* analysis at each of the three steps to preserve the objection. The majority disagrees.

In support of its contrary conclusion, the majority discusses our supreme court's plurality opinion in *Spencer v. State,* 238 So. 3d 708 (Fla. 2018).  In *Spencer,* the defendant raised a *Melbourne* challenge to the state's use of a peremptory strike. *Id.* at 716.  The court asked the state to provide a nondiscriminatory basis for the strike to which the state complied. *Id.*  At that time, the court informed counsel for the defendant that "you may respond" and counsel stated, "I have no response." *Id.*

While all seven justices agreed that the defendant's conviction should be affirmed, no rationale garnered the support of a majority of justices. Three justices signed the plurality opinion authored by Justice Quince; two concurred in result without a written opinion; and two concurred with an opinion.  The plurality held the defendant waived his challenge to the

strike when he failed to respond to the court's invitation. *Id.* at 717 ("Because the burden of persuasion was on defense counsel, as the opponent of the strike, and defense counsel did not respond, the trial court properly overruled the objections."). Generally, the plurality relied on *Hayes v. State*, 94 So. 3d 452, 460–61 (Fla. 2012), stating that "[w]hile we were not abandoning requirements for full preservation in *Hayes*, *Hayes* provides that the trial court has a duty to perform the correct legal analysis independent of trial counsel's duty." *Spencer*, 238 So. 3d at 716 (internal quotation omitted).

Justice Lawson wrote the concurring opinion, joined by Justice Canady, and explained that long before *Hayes*, the court addressed the issue in *Floyd v. State*, 569 So. 2d 1225 (Fla. 1990). *Spencer*, 238 So. 3d at 718-19 (Lawson, J., concurring). In *Floyd*, the court held that "[o]nce the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason." *Id.* (quoting *Floyd*, 569 So. 2d at 1229). Justice Lawson explained that the contrary language in *Hayes*, issued twenty-two years after *Floyd*, is mere dicta. *Id.* at 720–21 ("[T]here is no practical way for the opponent of the strike to meet his or her burden of persuasion without challenging the facially race-neutral reason as a pretext."). In other words, when a defendant remains silent after step 2, he cannot meet his burden of persuasion in challenging step 3.

The majority here agrees with the *Spencer* plurality and states that "in this District we contend there arguably is no conflict between *Hayes* and *Floyd*." Slip Op. 8. The majority states that "*Melbourne* imposes some procedural requirements as a duty on trial courts that do not require objections at each step to preserve the matter for appellate review; however, with regards to factual accuracy of assertions by the proponent of a peremptory strike, the standard preservation requirements apply." Slip Op. 9 (emphasis removed). Thus, the majority "conclude[s] that at a minimum, *Melbourne* imposes a duty on trial courts at Step 3 to request a response to the proffered explanation from the opponent of a peremptory challenge once Step 2 has been completed." Slip Op. 9.

The majority cites several cases from this Court in support of its conclusion. *See R.J. Reynolds Tobacco Co. v. Enochs*, 226 So. 3d 872, 874 (Fla. 4th DCA 2017); *West v. State*, 168 So. 3d 1282, 1285 (Fla. 4th DCA 2015); *Denis v. State*, 137 So. 3d 583, 586 (Fla. 4th DCA 2014); *Burgess v. State*, 117 So. 3d 889, 891 (Fla. 4th DCA 2013); *King v. State*, 106 So. 3d 966, 968 (Fla. 4th DCA 2013); *Victor v. State*, 126 So. 3d 1171, 1172 (Fla. 4th DCA 2012); *Cook v. State*, 104 So. 3d 1187, 1190 (Fla. 4th DCA

2012). But none of these cases involved a situation in which counsel for the defendant failed to challenge the race-neutral reason.

In *Denis*, we explained that "after the state proffered its race-neutral reason for the strike—that the juror had fallen asleep during voir dire—defense counsel contested the factual basis of the state's reason by informing the court that defense counsel did not see the juror fall asleep and asking the court to address whether it witnessed this behavior." 137 So. 3d at 585. Similarly, in *West*, after the state responded that its race-neutral reason for using the peremptory strike was that the juror was unemployed, counsel for the defendant objected. 168 So. 3d at 1283. The defendant's counsel stated that "[s]he said she's a housekeeper for a retirement home. Her husband was the one that was unemployed—no, I'm sorry, her kids are unemployed, but she's a housekeeper for a retirement home." *Id.*

In *King*, another cited case, we explained that "the State sought to exercise peremptory strikes as to three African–American jurors. On each occasion, the defense objected and sought a race-neutral reason. And, on each occasion, the defense took issue with the reasons offered by the prosecutor in support of the strike." 106 So. 3d at 968. The defendant also objected to the state's race-neutral reason in *Victor*, where we stated that in response to the state's proffered reason "[d]efense counsel noted that the State had not moved to strike other members on the panel who were also arrested." 126 So. 3d at 1173. The same occurred in *Cook*. After the state provided as a race neutral reason that the juror was "hesitant in answering" and "seemed distracted," counsel for the defendant immediately objected, stating "I don't think his being slow to answer questions would have anything to do with his qualification to be a juror on the case." *Cook*, 104 So. 3d at 1188.

On its face, *Burgess* presents a closer case. But there we specifically noted that the "defendant also pointed out the state's pattern of challenging black jurors." *Burgess*, 117 So. 3d at 891. The opinion also states that the defendant "alleged purposeful discrimination." *Id.* A review of the transcript of the hearing at issue, available from the St. Lucie County Clerk of Court, shows the defendant's objection to the state's proffered race-neutral reason was specific. The defendant's attorney stated that "the State is striking every African-American female so far. So I do think that that should be taken a look at when – when the State is saying that the reason for the strike is simply because these are in the profession of being a nurse." Counsel for the defendant specifically asserted that, "the court ought to be concerned with what the true motivations are."

These cases do not support reversal here. Unlike the cases discussed above, the Defendant here did not object to the State's proffered race-neutral reason. Instead, he remained silent. I find similarity between the facts here and *R.J. Reynolds*—another case cited by the majority. Two peremptory challenges were at issue there, though the colloquy about the first is relevant here:

> [PLAINTIFF]: He's a white male. I don't understand what –
>
> [COURT]: Everybody is a protected class under the case law.
>
> [PLAINTIFF]: Okay. Well, he's a smoker, and that's why I'm striking him, he's a smoker.
>
> [COURT]: All right. That's a gender-and-race-neutral reason. I will overrule defense objection.

*R.J. Reynolds*, 226 So. 3d at 873. I see little difference between the colloquy in *R.J. Reynolds* and the colloquy here. Yet we affirmed the court's decision in *R.J. Reynolds*, and allowed the strike based on the "overall record." *Id.* at 874.

All but one of the cases relied on by the majority are distinguishable; and, as for *R.J. Reynolds*, that case supports affirmance here. Yet the majority cites them and then imposes a new obligation on our trial judges to act as an advocate. Doing so does not serve the purpose of eradicating racial discrimination from the jury selection process. Instead, it eliminates the possibility that a party might accept the race-neutral reason proffered by the other party.

Justice Marshall's concurring opinion in *Batson* offered a prophetic prediction: "Merely allowing defendants the opportunity to challenge the racially discriminatory use of peremptory challenges in individual cases will not end the illegitimate use of the peremptory challenge." 476 U.S. at 105 (Marshall, J., concurring). He recognized that when a defendant established a prima facie case, "trial courts face the difficult burden of assessing prosecutors' motives" and that burden is one trial courts are "ill-equipped" to handle. *Id.* at 105-06.

Twenty years later, Justice Breyer concluded that "history has proved Justice Marshall right." *Rice v. Collins*, 546 U.S. 333, 342–43 (2006) (Breyer, J., concurring). And Justice Marshall is not alone. Justice O'Connor has commented that "[i]n further constitutionalizing jury

selection procedures, the Court increases the number of cases in which jury selection—once a sideshow—will become part of the main event." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 147 (1994) (O'Connor, J., concurring). My colleague, Judge Klingensmith, has opined that the "ensuing progression of the current case law has resulted in the death of the peremptory challenge by a thousand cuts." *Jones v. State*, 229 So. 3d 834, 837 (Fla. 4th DCA 2017) (Klingensmith, J., concurring).

The decision of the majority is yet another cut—one that further separates the procedure carried out in the trial courts from the purpose explicitly stated in *Batson* and *Melbourne*. In this district, we will now presume that the defendant rejects the state's stated nondiscriminatory basis for the strike. The *Melbourne* inquiry moves further from the goal of eliminating discrimination. Instead, the goal has become the process; the sideshow becoming part of the main event. Consistent with the concurring opinion of Justice Lawson in *Spencer*, we should require a party to raise an objection at every step of the *Batson-Melbourne* test.

This would also track many other jurisdictions that have addressed this issue. The Tenth Circuit has "refuse[d] to transform [the defendant's] inadequate effort to respond to the government into an error by the district court." *United States v. Vann*, 776 F.3d 746, 755 (10th Cir. 2015) ("Logically construed, the best way to interpret this series of events is that [the defendant] failed to carry his burden of persuasion to demonstrate to the district court that the prosecutor's use of a peremptory strike amounted to purposeful discrimination.").

Similarly, the Fifth Circuit has held that a party "waived his *Batson* claim, however, by failing to rebut the county's reasons for striking Juror Number Eight at the time he raised his claim." *Wright v. Harris Cty.*, 536 F.3d 436, 438 (5th Cir. 2008); *see also United States v. Arce*, 997 F.2d 1123, 1126–27 (5th Cir. 1993) ("Because this reason was not facially race-related and the defense did not dispute that explanation, the district court had no need to rule on its validity.").

The same is true in the Fourth Circuit, which has held "that Plaintiff waived his *Batson* challenge by failing to pursue his objection once Defendant offered a legitimate, nondiscriminatory explanation." *Davis v. Balt. Gas & Elec. Co.*, 160 F.3d 1023, 1028 (4th Cir. 1998). The Second Circuit reached the same result. *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir. 1990) ("Once the Government has offered reasons for its peremptory challenges, defense counsel must expressly indicate an intention to pursue the *Batson* claim. Here defense counsel did nothing.").

In the Sixth Circuit, "[i]f a defendant fails to rebut a race-neutral explanation at the time it was made, the district court's ruling on the objection is reviewed for plain error, and the movant in this setting is in no position to register a procedural complaint that the district court failed to give a specific reason on the record for accepting the government's race-neutral explanation. A movant's failure to argue pretext may even constitute waiver of his initial *Batson* objection." *United States v. Jackson*, 347 F.3d 598, 605 (6th Cir. 2003) (internal citation omitted).

The Eighth Circuit has also addressed the specific issue presented here. *Hopson v. Fredericksen*, 961 F.2d 1374, 1377–78 (8th Cir. 1992). That court held that the failure of counsel "to follow up on his *Batson* objection could have been reasonably construed by the trial judge as an agreement that the expressed reasons were racially neutral." *Id.*; *see also United States v. Bennett*, 928 F.2d 1548, 1550 n.1 (11th Cir. 1991) ("In the instant case, however, the defendant's attorney did not allege that the government's explanation was pretextual at the time the government made its explanation for the strikes."), *superseded by statute on other grounds as stated in United States v. Smith*, 127 F.3d 1388, 1389–90 (11th Cir. 1997).

A few states follow suit. *See Adair v. State*, 336 S.W.3d 680, 689–90 (Tex. Crim. App. 2010) (determining a defendant failed to meet his burden when he did not try to rebut the race-neutral reason provided by the prosecutor); *People v. Alvarado*, 759 N.Y.S.2d 659, 660 (N.Y. App. Div. 2003) ("With regard to the other three panelists at issue, by failing, at step three of the *Batson* application, to raise any arguments as to why the prosecutor's facially race-neutral explanations for his peremptory challenges were pretextual, defendant failed to preserve his present claims."); *State v. Washington*, 288 S.W.3d 312, 317 (Mo. Ct. App. 2009) (quoting *State v. Taylor*, 944 S.W.2d 925, 934 (Mo. 1997)) ("A defendant's failure to challenge the State's race-neutral explanation in any way waives any future complaint that the State's reasons were racially motivated, and leaves nothing for this Court to review.").

These courts concluded as they did for the same reason courts require preservation in any other instance. A trial court should not pursue arguments on behalf of a party. Instead, a party must present an argument to the court and, when presented, the court must determine the issue. There is no reason to blur this established line between the role of the court and those who appear before it.

The majority notes that four of these opinions predate the Supreme Court's decision in *Purkett*, and also states that the defendant's response

to the state's race-neutral reason is unclear in *Purkett*. But we do know the defendant's response. On remand from the Supreme Court, the Eighth Circuit explained that defense counsel sought to question the prospective jurors in response to the state's assertion. *Elem v. Purkett*, 64 F.3d 1195, 1199 (8th Cir. 1995). In any event, the courts that issued those four opinions consider the opinions to be good law. *See, e.g., United States v. Sanders*, 470 F. App'x 380 (5th Cir. 2012) ("By failing to dispute the Government's explanations, Sanders appeared to acquiesce in them."); *United States v. Whitfield*, 314 F. App'x 554, 556 (4th Cir. 2008) ("The failure to argue pretext after the challenged strike has been explained constitutes a waiver of the initial *Batson* objection."); *see also Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1230 (11th Cir. 2013) (Tjoflat, J., concurring) (citing *Davis*, 160 F.3d at 1027; *Hopson*, 961 F.2d at 1377; *Rudas*, 905 F.2d at 41) ("Three of our sister circuits have answered this question. If, after the State has come forth with non-discriminatory reasons for exercising the peremptory challenges at issue the defendant stands silent, the defendant waives his *Batson* objection; he may not resurrect it on appeal.").

Here, the Defendant asked that the State "offer a race-neutral reason for" the strike. In response, the State came forward with a neutral explanation for striking the juror. The Defendant did not challenge that reason. "[W]hen the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason." *Floyd*, 569 So. 2d at 1229. That is what occurred here, and *Floyd* should control our disposition.

I would affirm the Defendant's conviction.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**