DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FANNIE COLLAR,**
Appellant,

v.

**R.J. REYNOLDS TOBACCO COMPANY** and **PHILIP MORRIS USA, INC.,**
Appellees.

No. 4D15-3893

[July 5, 2017]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 31-2011-CA000115-XXXXX.

Celene H. Humphries, Maegen Peek Luka and Thomas J. Seider of Brannock & Humphries, Tampa, and Jonathan R. Gdanski, Steven Hammer and Brittany Chambers of Schlesinger Law Offices, P.A., Fort Lauderdale, for appellant.

William P. Geraghty and Rachel A. Canfield of Shook, Hardy & Bacon, LLP, Miami, Geoffrey J. Michael, David M. Menichetti, and Daphne O'Connor of Arnold & Porter Kaye Scholer, LLP, Washington, D.C., David Northrip of Shook, Hardy & Bacon, LLP, Kansas City, Missouri, and Charles R.A. Morse of Jones Day, New York, New York, for appellees.

GROSS, J.

We reverse the final judgment for the defense in an *Engle* progeny case, where the jury answered "No" to the question "Was [Plaintiff] addicted to cigarettes containing nicotine and, if so, was her addiction a legal cause of her lung cancer and/or COPD?"  The trial court made two inconsistent evidentiary rulings that favored the defense, which exploited those rulings as a theme of closing argument.

The court ruled that the plaintiff's treating pulmonologist was not qualified as an expert to testify that the plaintiff was addicted to nicotine.[1]

---

[1] We note that the court's determination that the pulmonologist was unqualified to give an opinion regarding addiction could be upheld under either *Daubert v.*

On cross-examination, however, over the plaintiff's objection, the court allowed the pulmonologist to testify that the plaintiff was able to quit smoking when "sufficiently motivated to do so."

During closing argument, the defense skillfully exploited the notion that the plaintiff's own treating doctor, not some hired expert, believed she could quit any time she wanted. The defense equated the plaintiff's motivation to quit with an absence of addiction in spite of the fact that the plaintiff resumed smoking 13 years after having a cancerous lung removed.

On closing, the defense theorized that the plaintiff smoked because she wanted to and the "case was about two words: control and responsibility." Counsel instructed the jury to ask who was in control of the plaintiff's efforts to quit smoking and who controlled her motivation to quit? "The truth [wa]s [plaintiff] could have quit smoking any time she wanted to." The plaintiff's own pulmonologist, who treated her since 1993, testified that "[i]f a smoker is not well motivated," it is much less likely the smoker will successfully quit smoking. Her pulmonologist agreed that the plaintiff could "quit when she was sufficiently motivated to do so."

The defense argued that the pulmonologist "probably [knew] her better than anybody you heard from during the course of this entire trial. He has no interest in the outcome of this case. He told you [the plaintiff] quit smoking when she was motivated to do so." "Her own doctor . . . said she quit when she was motivated to do so."

Defense counsel continued along the same theme. The "[pulmonologist] told you [the plaintiff] quit when she was sufficiently motivated to do so. Would you agree? I believe so. That's from the doctor that knows her better than anybody, from right here in Vero Beach." Counsel argued to the jury that if they decided the plaintiff "could have quit smoking whenever she was truly motivated to do so, then addiction [wa]s not a legal cause of her disease." The plaintiff objected, insisting this was not the legal standard. The objection was sustained. Defense counsel maintained he was simply responding to the plaintiff's arguments and the legal cause in this case was the plaintiff's decision to continue smoking. The plaintiff objected that defense counsel was mischaracterizing her statement, which was overruled.

---

*Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), or *Frye v. United States*, 293 F.1013 (D.C. Cir. 1923).

Defense counsel continued, urging that the legal cause was the plaintiff's decision to smoke, despite all the warnings. The legal cause was the plaintiff's "decision not to make a committed and determined and motivated effort to quit." "Frankly, you don't have to look any further than [the] plaintiff's own experts. . . . They told you anyone can quit smoking if they are motivated to do so."

"Does the [pulmonologist] say nicotine overpowered her? Does [the pulmonologist] say nicotine was the substantial contributing factor because it made her smoke and she couldn't quit? He told you, she quit when she was motivated." Defense counsel replayed the video of the pulmonologist's deposition testimony that the plaintiff quit when sufficiently motivated, arguing:

> That's her doctor. That's the only doctor that actually treated her. The only doctor that treated her for 22 years. The only doctor that saw her. She could quit when she was properly motivated.
>
> Nicotine, whether you call it an addiction or a habit, was not a substantial contributing factor in her disease. Everyone agrees that smoking was the cause of her disease. But she could quit. Nicotine didn't make her smoke so that she got a disease.

Defense counsel likened the situation to a movie about a runaway train, where "you can't steer, you can't brake, that crash is inevitable." The evidence in this case was that the plaintiff was not "strapped behind the steering wheel of a runaway train. She could control her smoking when she did. She could put the brakes on and slow her smoking down." Defense counsel concluded that none of the plaintiff's experts told the jury "that her addiction or her habit or her behavior was such that she was prevented from quitting at any time."

A smoker's motivation and ability to quit smoking is deeply intertwined with the smoker's addiction to nicotine; they are two sides of the same coin. This interlocking relationship was recognized by a federal court which found an expert's testimony regarding the smoker's differing levels of motivation to quit was "entirely consistent with the [National Institute on Drug Abuse] definition of 'addiction,' which accounts for the lack of motivation that smokers have to quit smoking and for their liking to smoke, even if they were aware of the dangers of doing so." *Starbuck v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 3d 1281, 1306 (M.D. Fla. 2015). The federal court rejected the defendants' attempt to generate a factual

dispute regarding the definition of addiction, in part based on this testimony about motivation to quit. *Id.*; *see also Frankson v. Philip Morris Inc.*, 4 Misc. 3d 1002(A), *1 n.4 (N.Y. Sup. Ct. 2004) (where expert was permitted to testify "that the decedent had the ability to quit smoking, notwithstanding his addiction, but was simply not highly motivated enough to do so").

If the pulmonologist was unqualified to opine that the plaintiff was addicted to nicotine, he was equally unqualified to opine concerning the plaintiff's motivation to quit, as evidence of the absence of addiction. Having disallowed the pulmonologist's testimony regarding the plaintiff's addiction, the court erred by allowing his addiction/motivation testimony on cross-examination.

The error in allowing this testimony, while excluding the related opinion of addiction, was not harmless.

"[I]n order to demonstrate harmless error, 'the beneficiary of the error [has the burden] to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.'" *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1255–56 (Fla. 2014) (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1135, 1139 (Fla. 1986)). "[T]he *DiGuilio* harmless error test focuses on the effect of the error on *both* the trier-of-fact and the result." *Id.* at 1256.

Defendants claimed that the plaintiff's lack of motivation meant addiction was not the legal cause of her disease, which was actually caused by her voluntary and informed decision to smoke. While this may have been true, it was not placed in the proper context—that in her own doctor's opinion, the plaintiff chose to smoke because she was addicted.

Defendants mischaracterized the evidence and relied on the exclusion of the pulmonologist's addiction opinion to claim "anyone can quit smoking if they are motivated to do so," which does not necessarily mean the smoker is not addicted. Defendants' "runaway train" analogy would have been less effective if the pulmonologist's opinion that the plaintiff was addicted to nicotine had been admitted or his opinion about the plaintiff's motivation to quit had been excluded.

Possibly, the jury's decision that the plaintiff was not addicted was based on the evidence that she was able to stop smoking for 13 years and stopped a second time when her health deteriorated. However, it cannot be said with any degree of certainty that the verdict would have been the

same if the trial court had included the pulmonologist's opinion that the plaintiff was addicted to smoking or if the trial court had excluded his opinion that the plaintiff quit when *sufficiently* motivated. Allowing only a portion of the pulmonologist's opinion regarding plaintiff's smoking addiction meant the jury could not consider his statements in context.

*Reversed and remanded.*

CIKLIN and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***