DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY,**
Appellant,

v.

**LESLIE SCHLEFSTEIN,** as Personal Representative of the Estate of
**DAWN SCHLEFSTEIN,**
Appellee.

No. 4D18-1150

[August 28, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mily Rodriguez Powell, Judge; L.T. Case No. 2008CV022558 (03).

Scott Michael Edson of King & Spalding LLP, Washington, DC, and William L. Durham II of King & Spalding LLP, Atlanta, GA, for appellant.

Alex Alvarez and Michael Alvarez of The Alvarez Law Firm, Coral Gables, Celene H. Humphries and Thomas J. Seider of Brannock & Humphries, Tampa, and Gary M. Paige of Gordon & Partners, Davie, for appellee.

KLINGENSMITH, J.

Defendant R.J. Reynolds Tobacco Company appeals from an adverse verdict in an *Engle*-progeny[1] survival action filed by Plaintiff Leslie Schlefstein on behalf of his late wife ("Mrs. Schlefstein"). Reynolds claims, among other things, that the trial court erred in limiting its ability to defend against the decedent's class membership after it withdrew its affirmative defense of comparative negligence. We agree that this was error and reverse for new trial. Our reversal renders moot the other issues raised on appeal.

## I.    Background

Plaintiff's initial complaint admitted that "[e]ach Plaintiff smoker bears some measure of fault," and requested apportionment of fault and

---

[1] *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).

damages. Plaintiff later withdrew this admission when he filed his fourth amended complaint. As a result, Plaintiff's negligence claim was amended to allege that the "*Engle* Phase I findings conclusively established that all of the Defendants were negligent," and that "[a]s a proximate result of the Defendants' negligence, Plaintiff's Decedent, sustained injuries[.]" In response, Reynolds withdrew its affirmative defense of comparative fault.

Before trial commenced, Plaintiff's counsel showed Reynolds' attorneys several slides intended for opening statement. Reynolds objected to one slide that read: "Class Membership is Not About:" the "Fault of either party," arguing this was an inaccurate statement of law:

> DEFENSE COUNSEL: I'm just letting Your Honor understand my objection that this is a little bit more substantive.
>
> There is -- it is the *plaintiff's burden of proof* to show that addiction was a legal cause of the disease, which means that these other things that they are talking about, her decision to smoke, her desire to smoke was the sole legal cause, then the plaintiff hasn't proven their case on class membership. So this is an inaccurate statement of law. If they want to add something in there that there can be other causes, that would be one thing. But what they are saying is it has *nothing* to do with it at all, and that's an inaccurate statement of law.

(Emphases added).

In response, Plaintiff's counsel furnished the trial court with appellate briefs filed in other cases to show that this argument had been previously presented to and rejected by this court.[2] The trial court overruled Reynolds' objection.

---

[2] The record from the lower tribunal shows that Plaintiff's counsel provided the trial judge with appellate briefs discussing the issues argued but never decided in those appellate cases. For example, Plaintiff pointed to this court's decision in *Perrotto v. R.J. Reynolds Tobacco Co.*, 169 So. 3d 284, 286 (Fla. 4th DCA 2015), using the briefs to suggest we had decided *Engle* class membership is not about "fault." However, *Perrotto* does not discuss class membership. Rather, the only issue decided in that case was the disqualification of the trial judge.

Plaintiff's counsel also asked the trial court to rely on *R.J. Reynolds Tobacco Co. v. Enochs*, 226 So. 3d 872, 873 (Fla. 4th DCA 2017), claiming Reynolds' arguments about "choice" and "failure to quit" had been considered and rejected in that case by this court. Plaintiff attached Reynolds' appellate brief in *Enochs* to its legal memoranda for the trial court on the issue of "choice;" where, "[p]laintiff won a verdict and, as one of the four issues on appeal, Defendant

2

During Reynolds' opening statement, counsel claimed that the evidence would show Mrs. Schlefstein did not make any attempt to quit smoking until her family members urged her to do so, prompting her to quit smoking to placate them as opposed to being of her own initiative. Plaintiff's counsel objected to this, saying this statement was inconsistent with Reynolds' withdrawal of its comparative fault affirmative defense. Plaintiff's counsel explained that the defense could not argue the decedent's reasons for stopping or restarting smoking because such matters related to what they described as "conduct evidence" involving the waived affirmative defense.

Reynolds took the position that the case was about what caused Mrs. Schlefstein's illness, arguing it was not caused by addiction but because she enjoyed smoking. In other words, Reynolds contended Mrs. Schlefstein smoked cigarettes and continued to smoke for reasons other than addiction. As to the withdrawn comparative negligence defense, Reynolds' counsel explained that this withdrawal merely removed the allocation of fault question from the verdict form. Thus, the withdrawal of the defense had no effect on Plaintiff's burden of proving class membership, nor did it limit Reynolds' ability to argue Mrs. Schlefstein was the sole legal cause of her illness. After further discussion, it was agreed that Reynolds' counsel would clarify its position in opening statement consistent with its withdrawal of comparative fault.

Reynolds' counsel continued and told the jury, "We are not blaming her. We are not criticizing her for her choices. They were her choices. We are not going to ask you to assign blame to her or answer a question saying that she contributed to her injuries." When Reynolds brought up the fact that Mrs. Schlefstein chose to hide her smoking from her parents when she was a teenager, the trial court sustained Plaintiff's objection and

argued that 'choice,' 'ability to quit,' and 'knowledge of dangers' were, in fact, part of the class membership." By doing so, Plaintiff's counsel suggested that this court considered those arguments and rejected them by affirming the verdict. However, the *Enochs* decision did not make a ruling on that issue; it merely mentioned that the issue was presented to this court on appeal. *Enochs* provides no authority on those issues presented here and should not have been presented to the trial court as such.

While it does not appear that the trial court expressly relied on any of these assertions in making its rulings, Plaintiff's counsel improperly submitted these appellate briefs to the trial court to expressly or impliedly represent these cases as persuasive or binding authority on the class membership issue. Doing so misstated the rulings of both cases on these matters. *See State v. Swartz*, 734 So. 2d 448, 448 (Fla. 4th DCA 1999).

struck that portion of the opening statement from the record.  This led to yet another sidebar conference, where Reynolds' counsel explained that Mrs. Schlefstein hid her smoking because she knew it was bad for her—relating to the reasonableness of her reliance pertaining to the alleged fraud and conspiracy claims as well as the addiction element of class membership.

Recognizing Plaintiff's objections to any "blame" and "choice" references would continue to recur throughout trial, Reynolds filed a memorandum of law explaining the effect of its withdrawn affirmative defense.  First, that the withdrawal of its comparative fault defense did not limit its ability to argue Mrs. Schlefstein's "choice" to smoke—the equivalent of "failure to quit"—was the sole legal cause of her injuries.  Second, that the withdrawal did not limit Reynolds' ability to defend against class membership because comparative fault only applies if the jury determined Mrs. Schlefstein was a member of the *Engle* class.  As such, available information about her smoking history was pertinent to the class membership discussion.

In response, Plaintiff argued Reynolds was not permitted to discuss "choice" because class membership only requires that the smoker was addicted, and that the addiction caused the disease.  *See Lorillard Tobacco Co. v. Mrozek*, 106 So. 3d 479, 481 (Fla. 1st DCA 2012).  Plaintiff's counsel continued:

> They are telling the jury it's a matter of: Was it addiction that caused the person to smoke long enough, that it's often enough and enough cigarettes to get sick, *or* was it choice? That is not the question.
>
> Choice is in play, whether it's an *addictive* choice or the choice driven by *something else specific*.  Choice is not a determinative.  It is not a part of the definition at all.  There's no support in *Douglas*,[3] there's no support in *Engle*, there's no support anywhere *for taking out that word "addiction"* and saying, well, if it's choice, then it must be the plaintiff's fault, because addiction is always part of the choice analysis.
>
> So the question is: Why did the plaintiff make the choice?  Was it addiction, or was it something else?

---

[3] *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419 (Fla. 2013).

(Emphases added). Following additional argument over whether Mrs. Schlefstein's "choice" to smoke could be argued as a general defense to class-membership, the trial court ruled:

> THE COURT: With regards to the class membership issue and as far as the fact that contributing cause has been withdrawn by the defense –
>
> DEFENSE COUNSEL: I'm sorry, Your Honor. Not contributing cause.
>
> PLAINTIFF COUNSEL: Comparative.
>
> THE COURT: Comparative, I'm sorry – comparative negligence has been withdrawn by the defense. If the defense has *another* reason *other than choice*, then the defendant can argue that the plaintiff was not addicted and chose to smoke *for that particular reason*. You cannot just argue that she made a choice to smoke.
>
> DEFENSE COUNSEL: Can I confer for a moment, Your Honor?
>
> THE COURT: Let me finish. The defense is precluded from arguing that the *plaintiff's decision to smoke*, despite knowing the risk, is a bar to legal causation or class membership *because* it withdrew the comparative negligence defense.

(Emphases added). Reynolds replied that this ruling was tantamount to a directed verdict on addiction causation that would be impossible to navigate during trial. Accordingly, Reynolds' counsel moved for mistrial:

> DEFENSE COUNSEL: And I guess I don't understand. I mean, we're back to the point I don't understand the Court's ruling. And I'm not trying to be obtuse. The Court said we're not allowed to argue choice. Those are reasons she made the choice to continue smoking.
>
> THE COURT: No, no. What I'm saying is that your *sole* argument cannot be that it was her choice. If you have *other reasons* that the evidence is going to establish, then you can argue those other reasons, and – and *that's* not precluded. You just cannot argue that the *only reason* is that she chose to smoke.

5

> DEFENSE COUNSEL: And I guess what I'm struggling with, those *are* the reasons that she chose to smoke. So they're not separable.

(Emphases added). The trial court further clarified that "the failure to quit is not relevant to class membership."

After the court denied the motion for mistrial, Plaintiff called his expert Dr. Drobes, who testified at length about the relationship between addiction and quitting. He opined that Mrs. Schlefstein's failed quit attempts and personal desire to quit met the criteria for addiction because "she attempted to cut down and quit over a period of years yet continued to smoke or was unable to cut down." He testified that Mrs. Schlefstein had a clinically significant "persistent desire or unsuccessful efforts to cut down or control tobacco use" because "she made several attempts to cut down and quit smoking, until she was finally successful."

Because of this testimony, Reynolds sought clarification as to whether the door was now opened, as counsel explained, "[t]o . . . make sure that I understand that quitting *is* relevant and admissible with respect to addiction and addiction causation" and whether "that's going to apply to the defense as well." (Emphasis added). The trial court initially responded that "it's not relevant to whether she falls within the *Engle* class," but then clarified that although the parties could ask questions about addiction, "what you cannot do is *blame* her and say it was her choice." (Emphasis added). Thereafter, Dr. Drobes continued expressing his opinions on addiction and quitting, including various methods the decedent used in attempting to quit.

On cross-examination, the trial court restricted Reynolds' counsel from delving into the issues of "choice" and "failure to quit." These restrictions were similarly enforced when Reynolds attempted to question its own expert witness Dr. Giakas. In response to Dr. Drobes' testimony that Mrs. Schlefstein "continued to smoke despite knowledge that her smoking could harm her"[4] because of her addiction, Reynolds' counsel asked Dr. Giakas whether a person who was aware of the health risks associated with smoking would be motivated to quit. Dr. Giakas answered, "Not necessarily. I mean, people know the risks of smoking and choose to take

---

[4] Plaintiff's counsel used a slide entitled "Definition of Addiction" during opening statement which read: "Addiction is characterized as a *chronic, relapsing brain* disease that is characterized by *compulsive* drug seeking and use, *despite harmful consequences.*"

those risks." Plaintiff's counsel's objection was sustained, and the answer was stricken from the record.

During closing argument, Plaintiff stated that Mrs. Schlefstein's failure to quit smoking established that she smoked because of addiction; therefore, Mrs. Schlefstein was a member of the *Engle* class. Reynolds, in turn, attempted to argue Mrs. Schlefstein's unsuccessful attempts to quit did not establish addiction because the evidence showed she simply "wasn't very interested in quitting." The trial court once again sustained Plaintiff's objection based on the withdrawn comparative fault defense. Ultimately, the jury determined that Mrs. Schlefstein was a member of the *Engle* class and proceeded to Phase II of the trial. At the conclusion of Phase II, the jury returned a verdict for Plaintiff on all claims and awarded $465,000 in medical expenses, $13.5 million in noneconomic damages, and $27,799,999.99 in punitive damages.[5] This appeal follows.

## II. Analysis

A trial court's decision to limit and preclude evidence and arguments is generally reviewed for abuse of discretion. *See Wall v. Alvarez*, 742 So. 2d 440, 442 (Fla. 4th DCA 1999). A court abuses its discretion when such decisions are based on an error of law. *See Wilbur v. Hightower*, 778 So. 2d 381, 385 (Fla. 4th DCA 2001). Where the trial court makes its determination about relevance when applying the law to the facts, those decisions are reviewed under the *de novo* standard. *See Cote v. State*, 14 So. 3d 1137, 1139 (Fla. 4th DCA 2009).

The central issue argued during Phase I in the trial court below was whether Mrs. Schlefstein was a member of the *Engle* class. To prove class membership on an individual basis, the plaintiff must establish "(i) membership in the *Engle* class; (ii) individual causation, i.e., that addiction to smoking the *Engle* defendants' cigarettes containing nicotine was a legal cause of the injuries alleged; and (iii) damages." *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 430 (Fla. 2013).

> In other words, the Phase I common liability jury determined general causation (the connection between the *Engle* defendants' addictive cigarettes and the diseases in question) which leaves specific or individual causation (the connection

---

[5] Reynolds raised the issue on appeal that the punitive damages award was "excessive and in violation of due process . . . ." We note, however, that they never invoked the provisions of section 768.73(2), Florida Statutes (2018) in the lower court.

7

between the *Engle* defendants' addictive cigarettes and the injury that an individual plaintiff actually sustained) to be determined on an individual basis. The *Engle* defendants may defend against the establishment of individual causation, for example, by proving that the disease at issue was the result of a genetic predisposition, exposure to an occupational hazard, *or something unrelated to the plaintiff's addiction* to smoking the *Engle* defendants' cigarettes."

*Id.* at 428 (emphasis added). Thus, the issue of class membership focuses on the decedent smoker's motivation and ability to quit smoking as a component of the larger question regarding the smoker's alleged addition. *See Collar v. R.J. Reynolds Tobacco Co.*, 222 So. 3d 581, 583 (Fla. 4th DCA 2017) ("A smoker's motivation and ability to quit smoking is deeply intertwined with the smoker's addiction to nicotine; they are two sides of the same coin.").

The gist of Plaintiff's argument on appeal is that when Reynolds withdrew its comparative negligence defense, it waived the right to argue that the decedent's actions caused her injuries. Reynolds' counter-argument is that its withdrawal did not deprive it of the right to argue that Mrs. Schlefstein's actions were the "sole legal cause" of her damages or restrict its right to defend against an issue on which the plaintiff carried the burden of proof. We agree with Reynolds in this case that the withdrawal of the affirmative defense does not alter an *Engle* plaintiff's burden of proof, or the defendant's ability to present evidence to counter it.

"An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist." *Custer Med. Ctr. v. United Auto. Ins.*, 62 So. 3d 1086, 1096 (Fla. 2010).

"A defendant has a right to waive any defense. Comparative negligence only has the effect of reducing damages *if liability is established*." *Bryant v. Fiadini*, 405 So. 2d 1341, 1343 (Fla. 3d DCA 1981) (emphasis added) (citations omitted). If the plaintiff was the sole cause of his or her injuries, the defendant's conduct cannot be the legal cause. *See Hoffman v. Jones*, 280 So. 2d 431, 438 (Fla. 1973).

"[W]ithdrawal of the comparative negligence defense [does] not in any way deprive [a defendant] of the right to argue that Plaintiffs' actions were the 'sole legal cause' of their own injuries." *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1485 (11th Cir. 1997) (applying Florida law). "[I]ndividual

8

plaintiffs do not simply walk into court, state that they are entitled to the benefit of the Phase I findings, prove their damages, and walk away with a judgment against the *Engle* defendants." *Douglas*, 110 So. 3d at 431. "Instead, to gain the benefit of the Phase I findings in the first instance, individual plaintiffs must prove membership in the *Engle* class." *Id.*

The *Engle* class definition requires that "the individual's smoking-related illness resulted from the individual's addiction to cigarettes containing nicotine." *Chacon v. Philip Morris USA, Inc.*, 254 So. 3d 1172, 1177 (Fla. 3d DCA 2018) (quoting *Damianakis v. Philip Morris USA, Inc.*, 155 So. 3d 453, 462 (Fla. 2d DCA 2015)). "Proving class membership often hinges on the contested issue of whether the plaintiff smoked cigarettes because of addiction or for some other reason (like the reasons of stress relief, enjoyment of cigarettes, and weight control argued below)." *Douglas*, 110 So. 3d at 431-32. Even if Reynolds had never raised a comparative negligence defense, the same evidence of addiction, or lack of it, would have been admissible at trial on the issue of class membership—that Mrs. Schlefstein was completely responsible for her smoking related injuries. The evidence describing her brief smoking abstentions, how long they endured, and her reasons for stopping directly refutes Plaintiff's contention that Mrs. Schlefstein was addicted and thus a class member.

Plaintiff relies on *Mrozek*, 106 So. 3d at 481, for the position that "choice" was not relevant to the plaintiff's burden of proving class membership and that class membership only requires that "the smoker is/was addicted to cigarettes containing nicotine, and contracted or died from a disease caused by cigarette smoking." However, that case is distinguishable on its facts.

In *Mrozek*, the tobacco company defendant argued that the trial court erred in granting summary judgment for plaintiff on the issue of class membership because there remained an issue of fact as to whether the plaintiff's illness was caused by addiction or "by her choice to continue smoking." *Id.* The First District affirmed summary judgment and held that "choice" was not relevant to class membership. *Id.* "Whether the addicted individual kept smoking after learning of cigarettes' deleterious health effects is a question of comparative fault, and thus, of liability to be determined at trial." *Id.* There, the plaintiff's addiction was undisputed. *Id.* In this case, Mrs. Schlefstein's addiction was contested by the defense. Accordingly, *Mrozek* simply reaffirms the proposition that it is an *Engle* plaintiff's burden to prove addiction causation, not that a tobacco defendant is precluded from arguing "choice" when trying to dispute it.

9

Similarly, Plaintiff incorrectly argues that *Douglas* requires a specific "reason" for a defendant to argue "choice" in defending against class membership, and absent a specific reason for the choice, Reynolds was precluded from making this argument. In support of this contention, Plaintiff focuses on the parenthetical list of reasons provided in that case, claiming a defendant must provide one of those specific reasons when arguing the individual's "choice" to smoke. However, nothing in *Douglas* suggests that "choice" alone, in and of itself, does not suffice. A plain reading of the subject passage in *Douglas* suggests that the Florida Supreme Court merely provided a non-exclusive list of examples that could be asserted to negate addiction causation. Using the language "*like the reasons of* stress relief, enjoyment of cigarettes, and weight control argued below" makes it clear that the Court never intended to prevent parties from suggesting other motives. *See Douglas*, 110 So. 3d at 432 (emphasis added).

In previous cases, this court has expressly recognized the "interlocking relationship" between a smoker's ability to quit and nicotine addiction:

> A smoker's motivation and ability to quit smoking is deeply intertwined with the smoker's addiction to nicotine; they are two sides of the same coin. This interlocking relationship was recognized by a federal court which found an expert's testimony regarding the smoker's differing levels of motivation to quit was "entirely consistent with the [National Institute on Drug Abuse] definition of 'addiction,' which accounts for the lack of motivation that smokers have to quit smoking and for their liking to smoke, even if they were aware of the dangers of doing so."

*Collar*, 222 So. 3d at 583 (quoting *Starbuck v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 3d 1281, 1306 (M.D. Fla. 2015)). Plaintiff's argument that "choice" is irrelevant is meritless in light of this "interlocking relationship." *See id.*

Furthermore, Plaintiff opened the door to Reynolds' "choice" arguments when they presented the testimony of their addiction expert, Dr. Drobes. The concept of "opening the door" allows admission of otherwise inadmissible testimony to explain or limit evidence previously admitted. *See Siegel v. State*, 68 So. 3d 281, 288 (Fla. 4th DCA 2011). After Plaintiff's expert testified that the decedent continued to smoke because of her addiction, despite knowledge that her smoking could harm her, the trial court erred in limiting Reynolds to saying, "we are not blaming Mrs. Schlefstein" or "we are not claiming she's at fault." Under those

10

circumstances, the trial court should have allowed Reynolds to argue what it believed were reasons *other than addiction* that the decedent continued smoking.

In arguing we should affirm the Phase II jury findings, Plaintiff claims that Reynolds was able to make all of its arguments on the contested issues in various ways throughout trial despite the trial court's rulings. The record shows that the trial court's rulings demonstrably impacted Reynolds' overall presentation of evidence notwithstanding Reynolds' counsel's attempt to navigate within the lines drawn. Plaintiff, as the beneficiary of the errors, must show there is no reasonable possibility that they contributed to the verdict. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014) (discussing harmless error analysis). Here, Plaintiff has not sustained his burden of showing that the defense was not hamstrung by the trial court's erroneous rulings throughout trial.

Reynolds' pretrial withdrawal of the affirmative defense of comparative fault prevented it from seeking a reduction of any recovery if the jury determined Mrs. Schlefstein was a member of the *Engle* class. The waiver of that affirmative defense did not foreclose its ability to defend against Plaintiff's burden of proving decedent's *Engle* class membership for Phase I. Because the line as to when "choice" becomes "addiction" is not defined, the trial court's limitation on Reynolds' ability to defend against the threshold issue of "addiction" because of the withdrawn affirmative defense was improper. This error affected the presentation of evidence throughout the trial proceedings such that a new trial on all issues is warranted.

*Reversed and remanded for new trial.*

LEVINE, C.J., and DAMOORGIAN, J., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

11